Mawer-Gulden-Annis, Inc., a Corporation, Plaintiff-Appellee, v. Brazilian and Colombian Coffee Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 49,394.

First District, First Division.

May 25, 1964.

James W. Cotter, of Chicago, for appellant.

Arnold A. Rosen, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff sued Brazilian and Colombian Coffee Company and Justin Weinshenk for olives sold and delivered to Brazilian or in the alternative to Brazilian through its president, Justin Weinshenk, acting as an agent for a principal which it did not disclose, or again in the alternative against Weinshenk acting as agent for an undisclosed principal.

Defendants denied they purchased the goods in their own right or for an undisclosed principal but stated that their function was as food brokers representing plaintiff in the sale wherein they would obtain a customer for plaintiff. They further state that the goods were actually delivered by plaintiff to the customer defendants obtained for the plaintiff. As an additional defense it is charged the oral agreement involving a sale in excess of $500 is barred and the transaction unenforceable by reason of ch 121½, Smith Hurd,

Ill Ann Stat sec 4 "Statute of Frauds" (1) and (2). (In effect at the time here involved.)

The court, in a bench trial, entered judgment against Brazilian for $4,857.60. Justin Weinshenk was dismissed. Brazilian contends that the judgment is contrary to the law and the evidence.

The evidence adduced discloses that on June 7, 1961, Justin Weinshenk, president of Brazilian, asked Tisdall, plaintiff's manager, whether plaintiff had available for sale 40 barrels of olives and was advised that the manager had to contact the New York office to determine if he could sell to defendant. Tisdall, on June 12, 1961, informed Weinshenk that the olives were available and quoted the sales price for them. Weinshenk then said, "You have a sale; get the olives ready." Tisdall having an appointment, on the way out of the plant at approximately 10:00 a. m., stopped to see the bulk foreman and in the presence of the shipping clerk, told him to get ready an assortment of 40 barrels of olives. He then left the plant. Shortly before noon a truck from A. F. Beske, an independent trucking firm, arrived and the driver requested the 40-barrel shipment. The shipping clerk released the 40 barrels and at the request of the driver made out a bill of lading indicating the consignee as the Pantry Queen Food Products Co. The shipping clerk had no copy of the sales order nor was Tisdall available. Upon his return, and being told the shipment was picked up, Tisdall made a sales order to Brazilian and the invoice was mailed promptly. In a letter dated June 20, 1961, Brazilian objected to the invoice stating that it attempted to contact plaintiff to give it the buyer's name. Brazilian insisted that Pantry Queen be invoiced. Plaintiff refused, claiming the sale was to Brazilian and that Pantry Foods was not acceptable because its credit was not good. Plaintiff had previously sued Pantry Queen to collect for merchandise plaintiff sold to it several years earlier.

There is a conflict of testimony as to whether the customer's name was revealed. Weinshenk says he disclosed the name of Pantry Queen, not the first time, but the second time Tisdall called. He said he wanted to tell Tisdall but could not get a hold of him. He wanted to tell him that in view of the fact that it was for Pantry Queen the olives should be put in the Lawrence Warehouse. He did write the plaintiff that he tried to contact them and to give them the name of the principal but had not been able to get in touch with them. Tisdall denied he was informed that Pantry Queen was the buyer and that the first time he learned this was when the bill of lading came in some time after the delivery was made. The shipping clerk testified that he overheard Tisdall's statement to the bulk foreman and when the truck pulled up he assumed this was the shipment mentioned because he had never had a shipment of such amount before. Usually a factory copy (of the order) is made out before delivery, but he had none for this shipment. The truck driver told him to make out the bill of lading to Pantry Queen. A. F. Beske, the trucking company owner, stated that the pickup was made at the request of Pantry Queen with whom he had dealt before. He said that he called plaintiff's plant and asked if the shipment for Pantry Queen was ready and the shipping clerk told him it was. The call was made the day before the pickup.

John O'Neill, president of Pantry Queen, now defunct, testified that he requested Weinshenk to purchase for him certain sizes and amounts of olives and one or two days later, upon being told the request was available, told him they would take them. He ordered Beske to pick them up. He stated that he talked to the plaintiff's shipping clerk. It could be the day the sale was confirmed and not the morning of the delivery because there was some delay in delivery.

403

June 12, 1961, the date of delivery, was a Monday. It was the same day Tisdall received confirmation from the New York office and the same day he told the bulk foreman to prepare the shipment.

In the instant case the trial court, upon hearing and weighing the evidence, and passing upon the credibility of the witnesses, found that Brazilian did not disclose the name of its principal at the time of contracting. We cannot hold that these findings were against the manifest weight of the evidence especially when in its letter of June 20, 1961, addressed to the attention of Tisdall, eight days after the confirmation and delivery, Brazilian, through Weinshenk, its president, writes, "The writer tried to contact you several times by phone and vice versa to give you the name of the buyer, but as your B/L #OZ 3990 (the bill of lading) indicates, you delivered these goods to our customers, Pantry Queen Food Products Company, and therefore you should have invoiced them for this merchandise directly."

In Wheeler v. Reed, 36 Ill 81 (1864), the court said at pp 90 and 91:

> "It is a settled rule in verbal contracts, if the agent does not disclose his agency and name his principal, he binds himself and becomes subject to all liabilities, express and implied, created by the contract and transaction, in the same manner as if he were the principal in interest. (Citing cases.) And the fact that the agent is known to be a commission merchant, auctioneer, or other professional agent, makes no difference." (Citing cases.)

The duty is upon the agent, who wishes to avoid liability, to disclose the name or identity of his principal clearly and in such a manner as to bring such adequately to the actual notice of the other party,

and it is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the identity of the principal. Weil v. Defenbaugh, 65 Ill App 489 (1895); Jackson v. Piowaty & Sons, 205 Ill App 329 (1917); 1 ILP Agency, sec 144; 3 CJS, Agency, sec 216. The reason for the rule is stated in American Appraisal Co. v. Pio, 246 Ill App 467 (1927), on p 469:

> "The necessity for disclosing who the principals are is to give the contracting party the opportunity to make inquiry as to the fact, and then to determine whether he is satisfied that such persons are the principals of the agent, and if they are, then whether such party is willing to extend credit to such principals."

The defendant's argument that the plaintiff is chargeable with knowledge of the principal from the fact that the carrier allegedly called and spoke to the shipping clerk regarding the olives and that the bill of lading made out by the shipping clerk showed Pantry Queen as the consignee, when taken together with the fact that defendant is generally known as a broker, is untenable.

■■ Even if we assume plaintiff, from the above circumstances, had learned the identity of the principal, such information was not so timely as to relieve defendant of liability. To avoid personal liability, disclosure of the principal must be made at the time of contracting, otherwise either the agent or the subsequently disclosed principal may be held. (Capitol Hardware Mfg. Co. v. Naponiello, 345 Ill App 272, 102 NE2d 685 (1951).) Comment c to the Restatement of Agency, 2d ch 1, sec 4 states the rule to be that disclosure of the principal's existence and identity subsequently has no bearing upon the relationship

created at the time of the transaction. Defendant, not having informed plaintiff of the customer for whom it was purchasing, therefore, contracted as a principal, and cannot now complain if it is held liable as such.

■ Lastly, defendant contends that the oral contract to sell goods in excess of $500 is within the Statute of Frauds, and that there is no proof of delivery, receipt and acceptance of the goods by defendant, but by Pantry Queen only, and in this regard, the latter was not agent for defendant. However, the acceptance and receipt required to remove the transactions from the Statute of Frauds may be made by someone authorized by the buyer to receive and accept the goods. 37 CJS, Frauds, Statute of, secs 159, 160, 161. There is no dispute that there was receipt and acceptance by Pantry Queen, defendant's admitted customer. Where, as here, an agent who fails to disclose his representative capacity is treated as the principal, his principal, who received the goods may be considered an authorized agent for that purpose, and the agent cannot deny the existence of that relationship. Here, defendant, had authority to enter into the instant contract binding Pantry Queen, and receipt and acceptance of the goods by the latter was sufficient to bind defendant. The Statute of Frauds does not preclude recovery of the purchase price of goods sold and delivered under an oral contract where the evidence establishes full performance by the parties.

For the foregoing reasons we conclude that the trial court correctly held defendant liable on the contract for sale of olives by plaintiff, and its judgment is affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.