Richard **BOTTORFF**, Plaintiff-Appellee,

v.

Joe **AULT** and United States Fidelity and Guaranty Company, Defendants-Appellants.

No. 15990.

United States Court of Appeals
Seventh Circuit.

March 6, 1967.

Rehearing Denied April 10, 1967.

James E. Keating, South Bend, Ind., for appellant.

Marshall F. Kizer, Richard F. Joyce, Plymouth, Ind., Daniel W. Rudy, South Bend, Ind., Kizer & Neu, Plymouth, Ind., Oare, Thornburg, McGill & Deahl, South Bend, Ind., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CUMMINGS, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-appellee, Richard Bottorff, brought this action to recover the price of 92 hogs, sold at auction, from the defendants-appellants, Joe Ault, an order buyer, and United States Fidelity and Guaranty Company, the surety on his bond posted pursuant to the Packers and

Stockyards Act of 1921, Title 7 U.S.C. § 204. The District Court entered judgment in the amount of $3,573.07 plus interest and costs for plaintiff after a trial by jury. This appeal followed.

The transactions out of which this cause arose occurred on October 4, 1961. The plaintiff was the owner and operator of Marshall County Sale Barn in Plymouth, Indiana, where livestock brought by farmers was sold at auction. Plaintiff was a "market agency" registered to sell livestock on a commission basis.

An auction was held on October 4, 1961, beginning at 6:00 p. m. Late in the afternoon of that day, Mr. Ault telephoned the plaintiff from Wabash, Indiana, stated that he was trying to buy hogs for a man in Kentucky and asked if he could get a truckload of hogs that night from the plaintiff, who said "yes" and told Mr. Ault to come to the auction. The plaintiff was told that he would be paid for the hogs by the man in Kentucky through checks sent by return mail when the hogs arrived in Kentucky.

When the sale started and Mr. Ault had not yet arrived, the plaintiff (pursuant to instructions in the telephone conversation) told one of his employees, Ernest Reed, to bid for Mr. Ault. Mr. Reed bid in 15 hogs. When Mr. Ault came, he bid in additional hogs and took over 20 more hogs bid in by one Joe Pence, at a total price of $3,553.25.

At the conclusion of each sale, the clerk gave out a written weigh-slip showing weight, price per hundredweight, and total price. Mr. Ault himself brought the weigh-slips for purchases of 92 hogs to the office of the sale barn, where Pauline Bottorff compiled a load-out slip from these weigh-slips. Mr. Ault instructed Mrs. Bottorff to ship the 92 hogs to one Otis Garmon of Summershade, Kentucky. He himself wrote out Mr. Garmon's name and his own commission (which he received) on the load-out slip. This was the first disclosure of the name of the ultimate buyer. The hogs were loaded on a truck apparently owned by Mr. Garmon and sent to Summershade, Kentucky.

The evidence showed that the auction sales at the barn were attended by buyers bidding for others, often known and established packing houses. The buyers were order buyers or "dealers" under the Packers and Stockyards Act of 1921, Title 7 U.S.C. § 201. They registered with the Department of Agriculture and obtained bonds as prescribed by the Secretary of Agriculture. Mr. Ault had so registered and had secured such a bond from the defendant United States Fidelity and Guaranty Company providing for payment by the Company if Mr. Ault as principal did not pay when due the purchase price of all livestock bought by him.

Ten days after the sale the plaintiff had still not been paid. He, Mr. Ault and Mr. Ault's brother went to Kentucky to see Mr. Garmon. They learned that he did not have sufficient funds on deposit with the bank at Marrow Bone, Kentucky, on the morning of their arrival, to cover checks. After some difficulty they located Mr. Garmon at Horse Cave, Kentucky, that evening. He then displayed a deposit slip showing a deposit of funds in the Marrow Bone bank. The record does not disclose the amount of the deposit. The plaintiff wrote out checks for Mr. Garmon's signature. One was to the order of the plaintiff in the amount of $3,573.07 which was the sum of the purchase price of the hogs $3,553.25 and Mr. Ault's commission of $19.82. The check was deposited the next day in Indiana but proved to be a "bad check." The plaintiff was never paid for the hogs.

The appellants argue that Mr. Ault was not liable and accordingly that the bonding company is not liable. They assert that plaintiff was not entitled to recover this sum from Joe Ault because plaintiff knew from the outset that Mr. Ault was bidding not for himself but for a man in Kentucky who was to send a check after delivery of the hogs, and that Mr. Ault was not going to pay for the hogs. The appellants feel that the plain-

tiff accepted these conditions because he invited Mr. Ault to come to the auction. Thus, the appellants reason that the plaintiff extended credit not to Mr. Ault whom he knew and who was covered by a bond, but to the as yet unnamed and unknown Otis Garmon. They argue further that the plaintiff's subsequent actions: his visit to Kentucky, his taking a check from Mr. Garmon, his friendly conversation along the way with Mr. Ault indicating that he did not hold Mr. Ault responsible for this transaction and his offer to employ Mr. Ault to manage the sale barn, all show that plaintiff intended to hold Mr. Garmon alone liable for the purchase price of the hogs.

■ It is further contended by the appellants that in the absence of any writing by Mr. Ault to pay the debt of another (Otis Garmon) the Statute of Frauds barred recovery; that Mr. Ault in any case bid in only a part of the 92 hogs; that the plaintiff ignored his own duty to diminish the damages when he refused to accept certain personal property and equipment offered by Mr. Garmon in the course of the conversation at Horse Cave, because they were already subject to liens. The appellants sought at the trial to show further that the plaintiff had in effect paid himself with monies otherwise due to his employee Ernest Reed. The District Court refused to allow testimony to show that Mr. Reed would have received a bonus but for the loss on the transaction here involved. We find no error in that regard.

■ It is uncontested that Otis Garmon's name was not disclosed until after the auction sale was completed. The sales here were at auction. They were completed when the hammer fell or when the auctioneer said "sold." Burns' Indiana Statutes, Anno. § 58–205 (1961 Repl.) An agent who acts for an undisclosed principal may be held as principal. Polk v. Haworth, 1911, 48 Ind.App. 32, 95 N.E. 332. The appellants contend that merely disclosing the fact of agency without disclosing the name of the principal was sufficient to avoid liability. We cannot agree. In Shorden v. Kyler, 1882, 87

Ind. 38, the Court held (at page 44) that an agent might bind himself personally although the consideration moved to his principal and his own want of interest in the transaction, except as agent, was known.

In a more recent case, Empire Livestock Marketing Co-operative, Inc. v. Carney (1952), 279 App.Div. 951, 110 N.Y.S.2d 823, the buyer at an auction when sued for the amount bid sought to defend on the ground he had disclosed the fact that he was not bidding for himself to the plaintiff's manager. He did not reveal the identity of his principal until after the auctioneer's hammer fell. Invoice was sent at his direction to that principal. The Court held that the bidder was not released from liability.

■ To avoid liability it was incumbent on Mr. Ault to disclose the name and identity of his principal clearly before and not after the sale was concluded. Mawer-Gulden-Annis, Inc. v. Brazilian & Col. Coffee Co., 1964, 49 Ill.App.2d 400, 404, 199 N.E.2d 222, 225, and authorities there cited; see also Restatement of Agency (2d) § 321.

■ Whoever bid in the individual batches of hogs, the evidence is sufficient to justify the apparent finding of the jury that Mr. Ault either bid the hogs in himself or had others do it for him. He took possession of all the weigh-slips.

■ As to the asserted duty to mitigate damages, we do not agree that the plaintiff was obliged to accept, in partial payment of a liquidated sum due, such personal property as was offered to him in place of the cash which he was entitled to receive. We have studied the tort cases cited by the appellants but find them of no assistance in resolving the contract question before us. The District Judge was not required to allow the jury to consider evidence of Mr. Garmon's offer of personal property and equipment in lieu of cash due. Nor is there any showing that had the plaintiff remained in Kentucky overnight to present Mr. Garmon's check promptly at the opening of the Marrow Bone Bank, in-

stead of presenting it to an Indiana bank that day, it would have been paid. It was not error to refuse to modify the instruction to the jury (that a check is payment for a debt only when paid) by adding the words proposed by the appellants:

Unless Bottorff held it and did not present it for payment for a longer period of time than an ordinarily prudent person would have done under the same or similar circumstances.

We have considered all other points and authorities presented by the appellants. We are satisfied, however, that the judgment of the District Court must be affirmed.

Affirmed.