956 F.2d 278
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 HARTFORD ACCIDENT & INDEMNITY COMPANY, a corporation,
Plaintiff-Appellee,
v.
CASSIDY COMMISSION COMPANY OF OKLAHOMA, INC., an Oklahoma
corporation; Archie R. Carpenter, Carolyn L.
Carpenter, Donald H. Kniss, all
individuals, Defendants,
and
Ken Sandoz, Defendant-Appellant.
 No. 91-6215.
 United States Court of Appeals, Tenth Circuit.
 Feb. 18, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Hartford Accident & Indemnity Company (Hartford) commenced this action under 28 U.S.C. § 2201 seeking a declaration that it is not liable to defendant Ken Sandoz in its capacity as surety on certain livestock dealer bonds. The district court granted summary judgment for Hartford and Sandoz appeals. We affirm.
 
 
 3
 The pertinent facts are stipulated. Cassidy Commission Company of Oklahoma, Inc. (Cassidy) is registered as a dealer in livestock under the Packers and Stockyards Act, 7 U.S.C. §§ 181-231 (the Act). As required under the Act, see 7 U.S.C. § 204, Hartford, in 1977, issued to Cassidy livestock dealer bonds which the parties refer to as the Conditions No. 1 Bond and the Conditions No. 2 Bond. The Conditions No. 1 Bond incorporates the language of the implementing regulation, see 9 C.F.R. § 201.31(a), and provides, in part, as follows:
 
 
 4
 Applicable if Principal SELLS on commission: (1) If the said Principal shall pay when due to the person or persons entitled thereto the gross amount, less lawful charges, for which all livestock is sold for the accounts of others by said Principal, then this bond shall be null and void, otherwise to remain in full force and virtue....
 
 
 5
 The Condition No. 2 Bond also incorporates the language of the implementing regulation, see 9 C.F.R. § 201.31(b), and provides, in part, as follows:
 
 
 6
 Applicable if Principal BUYS on commission or as a dealer: (2) If the said Principal shall pay when due to the person or persons entitled thereto the purchase price of all livestock purchased by said Principal for his own account or for the accounts of others, and if the said Principal shall safely keep and properly disburse all funds, if any, which come into his hands for the purpose of paying for livestock purchased for the accounts of others, then this bond shall be null and void, otherwise to remain in full force and virtue....
 
 
 7
 On December 1, 1988, Donald Kniss, a Cassidy employee, contacted Sandoz in Arizona by telephone. During the course of their conversation, Sandoz agreed to purchase and resell to Cassidy 230 head of cattle. The purchase price agreed to by Sandoz and Kniss was $98.50 per hundredweight, and the resale price was $99.00 per hundredweight, a difference of $.50 per hundredweight or a total difference of $496.28. Prior to the purchase and resale, Sandoz did not receive any descriptive material relative to the cattle, and the parties concede that the cattle never existed.
 
 
 8
 Sandoz issued a check to Kniss for $97,784.98 on December 1. The check was sent by airplane to Oklahoma City. It was picked up at the airport, endorsed by Kniss and deposited on December 1 or 2 in Cassidy's bank account. On December 2 and December 17, Cassidy issued checks to Sandoz for $98,281.26, which constituted the resale price agreed to by Kniss and Sandoz. Cassidy stopped payment on both checks and Kniss was discharged in January 1989.
 
 
 9
 The sole question presented in this case is whether Cassidy's livestock bonds provide coverage for the December 1 transaction. Interpretation of a bond is an issue of law which we review de novo. See Heins v. Ruti-Sweetwater, Inc. (In re Ruti-Sweetwater Inc.), 836 F.2d 1263, 1266 (10th Cir.1988). Because the bonds in question in this case are required by statute, we review the bonds in light of the statute. See Adair State Bank v. American Casualty Co., 949 F.2d 1067, 1072 (10th Cir.1991).
 
 
 10
 The purpose of the bond requirement of the Act is to safeguard producers of cattle against the losses they would suffer if they sold their livestock to insolvent or defaulting purchasers. Travelers Indem. Co. v. Manley Cattle Co., 553 F.2d 943, 945 (5th Cir.1977). By building confidence in the financial stability of livestock dealers, the Act seeks to stabilize and encourage the production of beef and other livestock. Id.
 
 
 11
 We agree with the district court that the Conditions No. 1 Bond has no application to the December 1 transaction. As the district court held, that bond applies to dealer sales of livestock on commission for an account of another, but the December 1 transaction involved an alleged repurchase of livestock by a dealer. By its terms, the Conditions No. 1 Bond was not intended to secure the type of transaction that occurred on December 1.
 
 
 12
 As for the Conditions No. 2 Bond, it would appear on its face to apply because Cassidy breached its obligation under that bond to pay "the purchase price of all livestock." Nevertheless, as the district court held, the Conditions No. 2 Bond could not cover the December 1 transaction because that bond expressly required the transaction to relate to some livestock, and it is stipulated by the parties that the December 1 transaction did not involve real livestock. The basic fact apparent from the record is that the purchase by Sandoz and the resale to Cassidy were merely paper formalities to enable Kniss to obtain a short term loan. This is not the type of transaction intended to be secured by the Act.
 
 
 13
 We recognize that the Act is remedial legislation, and it is entitled to a liberal construction to effectuate its purpose. However, even the most liberal view of the enactment does not disclose any intent to protect the December 1 arrangement between Sandoz and Kniss. As discussed above, the purpose to the Act is to secure purchases from cattle producers. Sandoz, as the district court held, can hardly be deemed a livestock producer as to nonexistent cattle.
 
 
 14
 The administrative and court decisions cited by Sandoz in his brief provide no help for his position. The administrative decisions deal only with awards of reparations for unjust, unfair, unreasonable, and discriminatory practices in violation of the Act. Ungaretti v. Hendrickson, 42 Agric.Dec. 1132 (1983); In re Wood County Livestock Auction, Inc., 33 Agric.Dec. 755 (1974). These decisions do not even discuss the scope of surety bond liability. Similarly, the court decisions cited by Sandoz, which address the question of bond liability, are distinguishable from this case because they involve the purchase of real livestock. Hays Livestock Comm'n Co. v. Maly Livestock Comm'n Co., 498 F.2d 925, 928-32 (10th Cir.1974); Bottorff v. Ault, 374 F.2d 832, 834-35 (7th Cir.1967); Cook v. Hartford Accident & Indem. Co., 657 F.Supp. 762, 763-64 (D.Neb.1987); Irvin v. United States Fidelity & Guar. Co., 599 F.Supp. 463, 464 (S.D.Ga.1984); Miles v. Starks, 590 S.W.2d 223, 224-25 (Tex.Civ.App.1979), cert. denied, 449 U.S. 875 (1980). We have found no authority for casting the transaction involved in this case as a purchase of cattle to allow recovery on a bond.
 
 
 15
 Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3