VANDER WAGEN BROS., INC., Plaintiff-Appellee, *v.* C. J. BARNES, d/b/a C. J. BARNES & COMPANY, Defendant-Appellant.

(Nos. 56797, 56829 cons.;

First District (3rd Division)—October 18, 1973.

Charles A. Wilson, of Chicago, for appellant.

James P. Morgan, David A. Stall, and Linda Gohlke, of Sundheim, Morgan & Sundheim, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

Vander Wagen Bros., Inc., a coal and oil dealer, filed suit against C. J. Barnes, a real-estate broker, who was doing business as C. J. Barnes & Co., for $9,283.64. It alleged that Barnes ordered coal and oil for eight buildings under his control and, after delivery and demand for payment, refused to pay for the fuel. Barnes admitted that there was delivery at his request but denied any liability on the accrued bills. His denial of liability was premised upon the contention that he was acting as an agent for principals who were disclosed to the plaintiff. The plaintiff's reply denied knowledge of the principals.

An amended complaint was filed which joined as defendants seven of the eight owners of the buildings to which the fuel was delivered. Judgment was entered for Vander Wagen against Barnes in the amount requested. None of the owners were included in the judgment entered at the conclusion of the non-jury trial. The plaintiff was unable to obtain service on some of them and the others were eliminated through voluntary non-suits or dismissal because of the plaintiff's inability to establish a cause of action against them.

Barnes raises the following points on appeal: the judgment was contrary to law because the owners, who ratified his acts as an agent and consumed the fuel, were liable; the judgment was against the manifest weight of the evidence; the court erred in not admitting competent evidence and in denying a motion for a new trial.

John Vander Wagen, president of the plaintiff corporation, testified about the bookkeeping procedures of the business. Statements of account and individual delivery receipts of the fuel shipments to the eight buildings during the period of 1964 to 1968 were introduced into evidence. The statements bore the name of "C. J. Barnes & Co.," the defendant's address, and the addresses of the buildings where the deliveries were made. The receipts bore the delivery addresses and notations that the fuel was sold to Barnes, or they included his name. Vander Wagen testified that he knew Barnes since 1953. Their business relationship began in 1963 when fuel was delivered at Barnes' request to the eight buildings. In 1968, all the previous bills not having been paid in full, Vander Wagen demanded payment; he put future deliveries to Barnes on a "cash on delivery" basis and then was told for the first time who

owned the buildings. Those bills for which payment was received, were paid by checks written by Barnes.

Walter Bohen, who solicited business for Vander Wagen on commission, testified that he dealt with Barnes and relayed the coal and oil orders to the company. He neither solicited orders for the buildings from anyone other than Barnes nor was advised who were the owners of the particular buildings.

Barnes testified that he specialized in the management of properties; he supervised buildings under a contract with the owners, collected rents, and paid bills. Among the bills were those pertaining to fuel. The janitors or the owners of the buildings would contact him when coal or oil was needed; he placed the orders with Vander Wagen Bros. either by personal phone calls or through Bohen. He stated that he advised Vander Wagen of the addresses of the buildings and that Bohen knew some of the owners at the time of the initial orders and Vander Wagen also did.

Vander Wagen testified in rebuttal that he was never informed of the actual owners prior to 1968 and that payments on the accounts were received only from Barnes.

■■ Irrespective of the issue raised by Barnes concerning the continuous agency relationship between himself and the building owners and their ratification of his acts by using the fuel, liability may be imposed upon him by the third party who transacted business with him. The focal point is whether the identity of the principals for whom Barnes ordered fuel was disclosed at the time of contracting. The rule, as the court stated in *Wheeler v. Reed* (1864), 36 Ill.81, is:

> "[I]f the agent does not disclose his agency and name his principal, he binds himself and becomes subject to all liabilities, express and implied, created by the contract and transaction, in the same manner as if he were the principal in interest."

See also *Annes v. Carolan-Graham-Hoffman, Inc.* (1929), 336 Ill. 542, 168 N.E. 637; *Carl Schiffmann Lumber Co. v. Rzepecki* (1942), 315 Ill.App. 485, 43 N.E.2d 156.

■■ In order to avoid any possible liability, it is the duty of the agent at the time of contracting to disclose the existence and identity of his principal. It is not sufficient that the third party has knowledge of facts and circumstances which would, if followed by reasonable inquiry, disclose the identity of the principal. (*Mawer-Gulden-Annis, Inc. v. Brazilian & Col. Coffee Co.* (1964), 49 Ill.App.2d 400, 199 N.E.2d 222; *Jackson v. M. Piowaty & Sons* (1917), 205 Ill.App. 329; *Weil v. Defenbaugh* (1896), 65 Ill.App. 489.) The fact that the agent is known to be

a commission merchant, auctioneer, or other professional agent is not a sufficient disclosure. (*Wheeler v. Reed; Mawer-Gulden-Annis, Inc. v. Brazilian & Col. Coffee Co.; Jackson v. M. Piowaty & Sons; Scaling v. Knollin* (1901), 94 Ill.App. 443.) Disclosure of his principal at the time a third party's services are engaged not only enables the agent to avoid liability but it provides the third party with an opportunity to evaluate the feasibility of contracting with the principal. The reasons for the disclosure have been stated in *American Appraisal Co. v. Pio* (1927), 246 Ill.App. 467:

> "If one contracts for others without disclosing for whom he is acting, then the contract becomes personal. The necessity for disclosing who the principals are is to give the contracting party the opportunity to make inquiry as to the fact, and then to determine whether he is satisfied that such persons are the principals of the agent, and if they are, then whether such party is willing to extend credit to such principals. Failing to disclose his now claimed principals to plaintiff, defendant by his contract bound himself personally."

Upon discovery of the principal, the third party may seek recovery from the agent or the previously undisclosed principal. Although either party may be liable, there is no joint liability between them; the plaintiff may sue both parties, but he must elect from whom he is to take judgment. (*Johnson v. Fischer* (1969), 108 Ill.App.2d 433, 247 N.E.2d 805; *Hugener v. Greider's Wooden Shoe, Inc.* (1969), 108 Ill.App.2d 98, 246 N.E.2d 323; *Capitol Hardware Mfg. Co. v. Naponiello* (1951), 345 Ill.App. 272, 102 N.E.2d 685.) Thus, despite the fact that the owners may also have been liable and they were the actual consumers of the plaintiff's products, there is no compelling legal reason which would preclude Vander Wagen from recovering from Barnes.

The conflicting testimony as to whether the names of the owners were revealed to Vander Wagen at the time of the initial contracting created issues of fact and credibility for the trial court's determination. Barnes said he gave the names to Bohen or John Vander Wagen. On the other hand, Bohen testified that he was not informed of the owners, and John Vander Wagen testified that the principals were not disclosed until Barnes was refused further credit and future deliveries were placed on a cash basis. The testimony of Bohen and Vander Wagen was bolstered by the documentary evidence which was introduced. Neither the statements of account nor the receipts bore a name other than that of Barnes. The weight to be given the testimony and the credibility of the witnesses were matters which were within the province of the trial judge. (*Johnson v. Fischer; Village of Glencoe v. Jackson* (1968), 102

Ill.App.2d 65, 243 N.E.2d 865.) The judgment of the trial court was not contrary to the manifest weight of the evidence and it will not be disturbed.

Barnes' remaining contentions are that the court erred in not allowing three of his exhibits to be admitted into evidence and the denial of his post-trial motion for a new trial which was based, in part, upon allegedly newly discovered evidence. The refused exhibits consisted of invoices and copies thereof from the Vander Wagen corporation which had become a division of the J. W. Petersen Coal and Oil Co. Coal had been delivered in December 1968 and in March 1969 to one of the buildings in controversy; coal had also been delivered in April 1969 to another building. All three vouchers included statements that the fuel was sold to "C J Barnes Realty Co Agts"; the delivery address was listed on each of the vouchers below Barnes' address. Although the vouchers evidence Vander Wagen's knowledge in December 1968 and in April 1969 of Barnes' status as an agent, the court properly refused to admit them into evidence. The exhibits could not have affected the outcome of the case. The deliveries reflected by the invoices were not relevant to the issue being tried; they occurred after the deliveries for which Barnes was being sued. The fact that Vander Wagen may have learned the identity of some or all of the principals after the deliveries in controversy were made does not relieve Barnes of liability. Subsequent disclosure of the existence or identity of principals has no bearing upon the relations created at the time of the transactions. Restatement (Second) of Agency § 4, comment c (1958).

The same rationale applies to the letters, claimed to be newly discovered evidence, which were the basis of the motion for a new trial. The three letters were written on October 20, 1969, by the attorney representing Vander Wagen and Petersen Coal and Oil Co. One, addressed to Barnes, requested payment of the outstanding bills; the letter listed the amount owned for each of the eight buildings, their addresses and seven of the eight owners. The other letters were addressed to two owners; each letter requested payment and threatened legal action. The three letters were not evidence that Vander Wagen knew the owners at the time it agreed to sell fuel to Barnes. The motion for a new trial was correctly denied.

The judgment of the trial court is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.