**John FREEMAN, Plaintiff,**

v.

**Robert W. LIU and Mimi W. Liu, Defendants.**

No. 86 C 1571.

United States District Court, N.D. Illinois, E.D.

June 24, 1986.

Michael J. Goldstein, Chicago, Ill., for plaintiff.

Thomas W. Murphy, Brian J. Wanca, Johnson, Cusack & Bell, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

John Freeman ("Freeman") has sued Robert and Mimi Liu ("the Lius") for firing him in breach of an employment contract. Federal jurisdiction rests on diversity of citizenship,[1] but the Lius contend that Freeman secured federal jurisdiction through artifice by failing to join as a defendant an indispensable party: his real employer, Freeman Tire Corporation ("FTC"), an Illinois corporation. The Lius therefore have moved to dismiss under Fed.R.Civ.P. 12(b)(7). The Court denies this motion for the reasons that follow.

The Lius' essential argument is that they hired Freeman as agents of FTC, not as individuals. Although they have cast their theory in terms of "indispensable parties," what they are essentially arguing is that FTC, not the Lius, is the only party potentially liable on the contract; that it is therefore the real party in interest, *see* Fed.R. Civ.P. 17(a); and that the complaint there-

---

1. The Lius are California citizens. Freeman is a citizen of Illinois.

fore fails to state a claim against them. The following facts [2] will illustrate how this is so.

Freeman was one of four shareholders and officers of "Freeman Tire & Supply Co. ("FT & S"), an Illinois corporation which buys and sells tires. In November 5, 1984, these shareholders sold the assets of FT & S to the Lius. The preamble of the purchase and sale agreement says that the contract was made by "the Lius," referred to as "Buyer." Article VI, paragraph G, of the contract says that the "Buyer," meaning the Lius, shall hire Freeman at $50,000 per year, and provide him medical insurance and a company car. The Lius later reincorporated FT & S as FTC. Thus, it appears that Freeman was selling ownership but not management of the company to the Lius. The separate employment agreement was to be, and was, signed on the date of closing.

That "Contract of Employment" generated the confusion that gives rise to the pending motion. The preamble states:

THIS AGREEMENT [is] made and entered into ... by and between ROBERT W. LIU and MIMI W. LIU, residents of Palos Verdes Estates, California, hereinafter referred to as the "Company," and JOHN FREEMAN, of Lincolnwood, Illinois, hereinafter referred to as the "Executive" of "Employee."

Paragraph 12 states that the contract annuls all previous contracts between Freeman and "the Company or ... Freeman Tire & Supply Co., Inc." The closing paragraph of the contract says that "Mr. Robert W. Liu and Mrs. Mimi W. Liu have caused its company name to be hereunto subscribed by its President and its duly attested Company Seal to be hereunto affixed by its Secretary, and the said John Freeman has affixed his signature and seal hereto." The contract is signed by "John Freeman, Executive," "Robert Liu" and "Mimi Liu." But, oddly, no "company name" is listed, no one is identified as President or Secretary, and no "company seal" is affixed to the contract.[3]

The Lius have attached some documents to their motion, revealing that: FTC, rather than the Lius, paid Freeman's salary (this is shown by a W–2 form). FTC also paid insurance premiums on Freeman's behalf, as shown by various invoices.

The parties' arguments have focussed not on the procedural factors of Rule 19, but rather on what is really an issue of agency law.[4] The Lius insist that they signed the contract merely as agents of FTC. In effect, they are saying they were not parties to the contract in their individual capacities. Freeman argues with equal vehemence that the Lius signed the contract as individuals, or, at most, as agents for an undisclosed principal, FTC. He concludes that this means FTC has little or no interest in the suit and is therefore "dispensable." Whether the Lius intended to be bound is a factual question. *See Knightsbridge Realty Partners v. Pace,* 101 Ill.App.3d 49, 53, 56 Ill.Dec. 483, 487, 427 N.E.2d 815, 819 (1st Dist.1981). The outcome of this debate obviously hinges on the parties' intent when they signed the contract. *Cf. Stap v. Chicago Aces Tennis Team, Inc.,* 63 Ill.App.3d 23, 26, 20 Ill.Dec.

---

**2.** The facts are taken from the complaint, the exhibits attached to the complaint and from some exhibits attached to the Lius' motion. Because we are straying from the complaint in analyzing the facts, we must apply the standards of Rule 56. *See* Fed.R.Civ.P. 12(b).

**3.** Indeed, Mr. Liu's amended affidavit identifies him as Chairman of the Board of FTC, not President.

**4.** The parties have assumed without discussion that Illinois law governs substantive issues in this suit. Their unspoken assumption is correct. The *Erie* doctrine requires the court sitting in diversity to apply the choice of law rules of the forum state to determine which state's substantive law to apply. *Klaxon v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We recently held that Illinois courts now apply the modern "most significant relationship" test to contract disputes. *See Wonderlic Agency, Inc. v. Acceleration Corp.,* 624 F.Supp. 801, 803–04 (N.D.Ill.1985). The only two states with contracts to this suit are Illinois and California, and Illinois' contacts clearly outweigh California's under the factors set forth in *Wonderlic,* 624 F.Supp. at 804.

230, 232, 379 N.E.2d 1298, 1300 (1st Dist. 1978). It is axiomatic that we will first confine ourselves to the parties' contracts in trying to divine this intent. *See, e.g.,* Restatement (Second) of Agency, § 323(1) (1957). If the contracts yield no unambiguous answer, however, we may look to extrinsic evidence to guide our decision. *See id.* at § 323(2).

We think the contracts are ambiguous about whether the Lius were acting as individuals, as agents of FTC, or both, when they hired Freeman. The purchase and sale agreement seems clearly between FT & S, the shareholders, and the Lius *as individuals,* dubbed as "Buyer" for that contract. When that agreement says in Article VI, ¶ G that the "Buyer" must hire Freeman, it seems to suggest that the Lius as individuals must do so. Yet it is not unreasonable to construe this merely as a promise to do so on behalf of the company they were buying. The employment contract says it is between the Lius and Freeman, and is signed by them as such. This again suggests that they hired him as individuals and dovetails with our first construction of the purchase agreement. Yet the contract also suggests that they were acting in some kind of corporate capacity. If not, it is odd that these two individuals referred to themselves as "the Company" (although they never identified the Company).[5] And although they obliquely mentioned a "company name" and "company seal" at the end of the contract, suggesting they were not acting as individuals, they strangely left out the name and seal and apparently signed the contract as individuals. Nowhere does the contract clearly state that they were acting on behalf of another entity. In sum, relying only on these documents, we cannot glean a clear indication of whether the parties intended to bind the Lius, FTC or both.

Turning to outside evidence, all we have before us is the documents showing that FTC probably paid all of Freeman's salary and benefits. This evidence of what happened *after* the contract was signed certainly lends some support for the Lius' position but is not conclusive on whether the parties intended *when they signed* the contract that the Lius would be a party to it. It might be, as we describe later, that the parties intended that both the Lius and FTC would be bound. Or it might be that the Lius were agents for FTC, who therefore paid the salary, but did not disclose this to Freeman. At present there is no clear extrinsic evidence about what the parties intended. It follows that a genuine factual dispute exists over the parties' intent, one that we cannot resolve on the record before us. Despite this state of seeming factual chaos, it turns out that FTC is not an indispensable party no matter how the factual dispute is resolved.

This conclusion plainly results if Freeman's view of the facts is right. If the Lius signed the contracts *only* in their individual capacity not as an agent of FTC, FTC would not be liable to Freeman, and indeed, would be irrelevant to the suit. Even a cursory reading of Rule 19 shows that it would not be indispensable to the case.

Under the Lius' view of the facts, Rule 19 *again* would not come into play, although the case would probably have to be dismissed for other reasons. The Lius essentially argue that they were agents of FTC when they hired Freeman, that this was disclosed to Freeman, and that the parties did not intend to bind the Lius to the contract. If the Lius are right, this would constitute the normal situation where the principal, but not the agent, is liable on the contract to the third person. *See Baird & Warner, Inc. v. Addison Industrial Park, Inc.,* 70 Ill.App.3d 59, 67, 26 Ill.Dec. 1, 8, 387 N.E.2d 831, 839 (1st Dist. 1979); *Moore v. Lewis,* 51 Ill.App.3d 388, 393, 9 Ill.Dec. 337, 343, 366 N.E.2d 594, 600 (1st Dist.1977); Restatement (Second) of Agency § 320 ("Restatement"). Accordingly, the complaint would fail to state a claim against the Lius and would have to be dismissed under Rule 12(b)(6). Under this outcome, FTC is seen more properly as

---

**5.** This might be because FTC was only later     reincorporated.

the real party in interest rather than as an indispensable party.

These are not the only possible factual outcomes in this case. There are two others, only one of which Freeman alluded to briefly, while the Lius ignored these other possibilities. Under these final two outcomes, as under the previous two, Rule 19 would not require dismissal.

First, the facts plausibly suggest that the Lius were signing the contract as agents of a disclosed principal, FTC, but were also agreeing to bind themselves personally. Although as we just saw above, an agent is generally not liable when acting on behalf of a disclosed principal, the agent may agree to assume liability by joining the principal as a party to the contract. *See Knightsbridge Realty Partners, Ltd. 75 v. Pace,* 101 Ill.App.3d 49, 53, 56 Ill.Dec. 483, 487, 427 N.E.2d 815, 819 (1st Dist. 1981); *Western Casualty & Surety Co. v. Bauman Insurance Agency,* 81 Ill.App.3d 485, 486, 36 Ill.Dec. 773, 774, 401 N.E.2d 614, 615 (2d Dist.1980); Restatement, § 320 ("unless otherwise agreed," agent not party to a contract) & comments b, c. Generally, where the agent is such a co-promisor in the contract, the principal is primarily liable to the third party, and the agent is in effect a surety. *See* Restatement § 320, comment e, § 335. Where, as here, the third party seeks recovery only from one party to the contract—the agent and not the principal—the question, which we shall return to shortly, becomes whether the principal is indispensable under Rule 19.

Second, and finally, the facts suggest that the Lius might have signed the contract on behalf of FTC, but FTC's existence as principal was either "undisclosed" or "partially disclosed" to Freeman. If an agent makes a contract with a third party on behalf of an undisclosed[6] or partially disclosed[7] principal, the agent is personally liable to the third party. *See, e.g., Rosen v. DePorter-Butterworth Tours, Inc.,* 62 Ill. App.3d 762, 766, 19 Ill.Dec. 743, 746, 379 N.E.2d 407, 410 (3d Dist.1978); *Vanderwagen Bros., Inc. v. Barnes,* 15 Ill.App.3d 550, 553, 304 N.E.2d 663, 665 (1st Dist. 1973); Restatement, § 322 (1957). In order to avoid possible liability the agent must when he contracts with the third party disclose the existence and identity of the principal; it is not enough that the third party could figure it out after reasonable inquiry. *Vanderwagen,* 15 Ill.App.3d at 553, 304 N.E.2d at 665. If indeed the Lius were acting as agents for an undisclosed or partially disclosed principal, Freeman may join both in one suit, and if he does so he must *elect* which one to hold liable, since there is no joint liability. *Id.* at 554, 304 N.E.2d at 665; *Johnson v. Fischer,* 108 Ill.App.2d 433, 437, 247 N.E.2d 805, 807 (2d Dist.1969); *Annes v. Carolan-Graham-Hoffman,* 336 Ill. 542, 545–46, 168 N.E. 637, 638 (1929); Restatement, §§ 210A, 321, 322. But he does not have to sue both. Alternatively, he could choose to sue the Lius only, since they are individually liable. *See* Restatement § 321, comment b.

Freeman argues that FTC cannot possibly be an indispensable party under this last scenario, since if he elects to sue the Lius only, a judgment will not prejudice FTC in any way. This is not as simple as Freeman suggests. First of all, if the principal, FTC, is not joined, its potential liability to Freeman is not discharged until Freeman recovers, that is, satisfies a judgment against the Lius. *See* Restatement §§ 209–211 & comments. Thus, if the Lius did not pay the judgment, FTC could still be liable and, moreover, potentially bound by collateral estoppel to the results of this suit. *See* Restatement § 210(3). However, this potential prejudice to FTC could be eliminated if Freeman would agree to forego all rights against FTC, and this would

---

6. A principal is undisclosed if at the time of making the contract in question, the other party to it has no notice that the agent is acting for a principal. Restatement (Second) of Agency § 4 (1957).

7. A principal is partially disclosed if at the time of making the contract in question, the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity. Restatement, § 4.

then support a finding that FTC is not indispensable. *See* Rule 19(b) (naming as a factor the extent to which a judgment can be shaped to lessen or avoid prejudice against the non-party). But even if Freeman stipulated to waive all claims against FTC,[8] a judgment could nevertheless ultimately harm FTC. For it appears that the Lius would probably have a right to obtain indemnification or exoneration from FTC to the extent they are held liable. *See* Restatement §§ 438–40 (setting out contours of principal's general duty to indemnify agent); *see especially* § 439(c) (general duty to indemnify agent for damages paid to third party for breach of contract). In sum, it appears that under this "undisclosed principal" scenario, a judgment against the Lius arguably affects FTC's interests. Thus, this factual outcome generates much the same issue as the last one. If the third party sues only the agent, is the principal indispensable where a judgment against the agent would expose the principal to liability via a suit for contribution or exoneration? The answer is clearly no.

■ Rule 19 sets out a two-step procedure for deciding whether a party is "indispensable." *See, e.g., Pasco International Ltd. v. Stenograph Corp.,* 637 F.2d 496, 500 (7th Cir.1980). First, the Court must decide under Rule 19(a) whether FTC is a party to be joined "if feasible." It is such a party if (i) complete relief cannot be accorded the parties if FTC is not joined or (ii) disposition of the suit will as a practical matter impair or impede FTC's ability to protect its interests. *See* Fed.R.Civ.P. 19(a)(2)(i) & (ii). We will assume below, without deciding, that the two factual scenarios which expose FTC to possible liability via indemnity or exoneration satisfy Rule 19(a)(2)(ii). Assuming this, we must turn to Rule 19(b) and decide whether "in equity and good conscience" the case should proceed as is or be dismissed because FTC is "indispensable." Rule 19(b) sets out four factors to guide us:

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

No one of these factors is necessarily determinative; nor is the list all inclusive. *See generally* C. Wright & A. Miller, *Federal Practice & Procedure,* § 1607 (1972).

■ Looking first to the "alternative forum" issue, we see that Freeman has a convenient, alternative forum available to him: Illinois state court. This factor therefore does not weigh against dismissal. But neither does it support dismissal:

Where the plaintiff can otherwise maintain a diversity action in the federal courts, the plaintiff has an interest in the forum granted by federal law and chosen by him. To outweigh the plaintiff's choice some additional interest of the absent person, the other parties or the judicial system must be found.

*Pasco,* 637 F.2d at 501. This factor works only negatively, that is, weighing heavily against dismissal if no other forum exists but weighing only slightly for dismissal if another forum exists. *Id.* at 501 n. 9.

The *Pasco* case compels—quite clearly, in fact—a conclusion that the other factors of Rule 19(b) do not warrant dismissal of this case. While that case involved a suit against a principal rather than the agent, the rationale supporting the Court's conclusion that the agent was not indispensable applies with equal force to this case. Like the agent in *Pasco,* FTC would not be seriously prejudiced by an unfavorable judgment against the Lius. 637 F.2d at 502. As noted earlier, a condition of such a judgment could be a waiver of any direct

---

**8.** Reading between the lines of Freeman's briefs,   we suspect he would agree to such a stipulation.

claim against FTC.[9] The remaining possibility of an indemnity suit does not amount to prejudice or "additional litigation" mandating dismissal under Rule 19. *Id.* at 502, 503–04. "Potential indemnitors have never been considered indispensable parties or even parties whose joinder is required if feasible.... The same situation as to indispensability and joinder applies to joint tortfeasors subject to a possible right of contribution." *Id.* at 503 (citation omitted). Similarly, joint obligors to a contract are generally not considered indispensable, since their liability is usually joint and several. *See* Wright & Miller § 1613, at 125–26. Under these principles, which the Lius do little to contest, FTC is clearly not indispensable. This is especially so in light of the *Pasco* court's ringing endorsement of using Rule 14 as an alternative to dismissal under Rule 19. The *Pasco* Court explained that Rule 14 allows the present defendant to protect its interest by impleading the third party to raise the indemnity claim. 637 F.2d at 503. This also allows the third party to participate in the suit.[10] In fact, in repeatedly relying on Rule 14 in its analysis, the Court went so far as to say in a footnote:

> This repeated application of Rule 14 to this case means that all persons subject to impleader by the defendant are not indispensable parties. This is, however, merely an extension of the settled doctrine that Rule 19(b) was not intended to require the joinder of persons subject to impleader under Rule 14 such as potential indemnitors. Advisory Committee's Note to Rule 19, 39 F.R.D. 88, 91 (1966).

*Id.* at 505 n. 20. Rule 14 is just as available to the Lius as it was to the defendant in *Pasco*. It is up to them to use it, and they surely will not be prejudiced if they choose not to use it and litigate without FTC. To summarize, then, *Pasco* requires the Court to find that FTC is not indispensable.

This conclusion means, of course, that FTC is not an indispensable party under *any* of the four possible factual outcomes spelled out earlier in this case. We therefore deny the Lius' motion to dismiss under Rule 12(b)(7).

Of course, at this juncture we cannot decide which factual outcome fits this case. As we held, the facts surrounding the parties' intent are in some dispute. However, one of the outcomes would require dismissal of the suit for failure to state a claim. *See* above at 5–6. Before the next status hearing the parties shall consider and evaluate their positions under the above analysis and report to the Court on how they plan to proceed or whether they plan to proceed at all from here. In addition, the parties shall seriously discuss the prospects of settlement or, alternatively, shall ask their clients if they (including perhaps FTC) would be willing to resolve this simple employment dispute quickly through binding mediation or arbitration. We think the parties might more quickly and fairly resolve the case in this way than if they spend the next several months bickering over the minutia of agency law. Having said this, we deny the Lius' motion to dismiss. It is so ordered.

---

**9.** This possibility, which can be seen as part of the third "shaping" factor of Rule 19(b), might not even be necessary. As we note later in the text, a party to a contract is generally free to sue only one of several other parties to the contract, so long as liability is joint and several. *See* Wright & Miller, § 1613 at 125–26.

**10.** Even if the Lius do not avail themselves of Rule 14, FTC has another procedural way to protect itself. Assuming it can satisfy Rule 24(a), it can intervene as of right in this suit and come within the Court's ancillary jurisdiction. *See Pasco,* 637 F.2d at 502 n. 13; Wright & Miller, § 1610 at 100.