**VMS/PCA LIMITED PARTNERSHIP, Plaintiff,**

v.

**PCA PARTNERS LIMITED PARTNERSHIP, Property Company of America, Inc., Paul D. Hinch, Ronald M. Beneke and Hugh L. Caraway, Jr., Defendants.**

No. 89 C 4293.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1989.

Robert P. Cummins, James S. Renard, Bickel & Brewer, Chicago, Ill., for plaintiff.

Gerald D. Mindell, Sperling Slater & Spitz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

### I.

### Introduction

The plaintiff VMS/PCA Limited Partnership ("VMS") and one of the named defendants PCA Partners Limited Partnership ("PCA") entered into a joint venture, the Property Company of America Joint Venture ("Joint Venture"). The relationship between VMS and PCA soured, however, so VMS brought this suit against PCA, and after twice amending its complaint, against the Property Company of America, Inc. ("Property Company") and its three controlling persons Paul Hinch, Ronald Beneke, and Hugh Caraway. Both sides filed a flurry of papers and conducted expedited discovery, and a preliminary injunction hearing was scheduled before Magistrate Joan Humphrey Lefkow for her report and recommendation. On June 14, shortly before the scheduled preliminary injunction hearing, we denied the defendants' motion to dismiss to the extent that it was based on the failure to join the Joint Venture as

an indispensable party and to the extent that it was based on VMS' failure to bring an accounting before proceeding in this action. We promised that an opinion would follow and took the remainder of the motion and the rest of the outstanding motions under advisement. The next day, presumably after learning of our decision and before the preliminary injunction hearing, PCA filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas. The filing stayed the preliminary injunction hearing and all other proceedings against PCA.

At a subsequent hearing, we asked the parties to consider whether PCA was an indispensable party, that is, whether we could proceed in its absence. At our request, the parties filed briefs on this issue. In addition, Property Company renewed its previous motion to transfer this case to the Northern District of Texas, and VMS filed a motion to sever its claims against Property Company. On August 15, we denied VMS' motion to sever.

In this opinion, we will set out the reasons for our June 14 decision. In addition, we will consider whether PCA is an indispensable party and whether transfer to the Northern District of Texas is warranted. For the reasons set forth in section IV, we conclude that PCA is not an indispensable party. For the reasons set forth in section V, we grant the motion to transfer.

## II. Is the Joint Venture an Indispensable Party?

■ In both its original and first amended complaints, VMS brought only state law claims against PCA alone. Our jurisdiction was premised on diversity: VMS, an Illinois limited partnership whose general and limited partners are all from Illinois, is considered an Illinois citizen, while PCA, as a Texas limited partnership, whose general and limited partners are Texas corporations or partnerships with principal places of business in Oklahoma, is considered a citizen of Texas and Oklahoma.[1] However, PCA asserted that VMS had failed to join an indispensable party, namely, the Joint Venture itself. For diversity purposes, the Joint Venture is considered to have the citizenship of both joint ventures, that is, Illinois, Texas and Oklahoma. Although PCA never made clear whether they thought the Joint Venture should be joined as a plaintiff or a defendant, no matter where it was joined, it would have destroyed complete diversity and eliminated our jurisdiction.

VMS responded that the Joint Venture was not an indispensable party, but it also amended its complaint to add a federal RICO claim; that way, even if we decided that the Joint Venture was a necessary party, it could have been joined without destroying our jurisdiction.[2] However, VMS was not yet home free. The defendants now argued that VMS had failed to allege a pattern of racketeering activity sufficient to state a claim under RICO. Of course, the question of pattern under RICO is often a difficult one, and at the time of our decision, we knew that a case which raised that question was pending before the Supreme Court. (That case, *H.J., Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), was decided shortly after we denied the motion to dismiss.) Accordingly, we thought it best to reserve judgment on the RICO question, and so we assumed, without deciding, that VMS had failed to state a claim under RICO and proceeded to consider whether the Joint Venture was an indis-

---

1. We note that the Seventh Circuit considers the citizenship not only of the general partners, but also of the limited partners, in determining the citizenship of limited partners. *See Stockman v. LaCroix,* 790 F.2d 584, 587 (7th Cir.1986). Some circuits, by contrast, consider the citizenship of only the general partners. *See, e.g., Mesa Operating Limited Partnership,* 797 F.2d 238, 242–43 (5th Cir.1986). *See generally* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3630 at 684, n. 5 (2d ed. 1984).

2. In its second amended complaint, VMS also added the Property Company, a Texas corporation with its principal place of business in Oklahoma, and three of its officers, citizens of either Texas or Oklahoma. These new parties did not affect our jurisdiction under the diversity statute.

pensable party. We decided that it was not.

Rule 19 of the Federal Rules of Civil Procedure sets out the standards for the "Joinder of Persons Needed for Just Adjudication." Under Rule 19(a), the first question is whether the Joint Venture is a "person[ ] to be joined if feasible." It is such a person if (1) complete relief cannot be accorded the parties if the Joint Venture is not joined or (2) disposition of the suit will as a practical matter impair or impede the Joint Venture's ability to protect its interests. *See* Fed.R.Civ.P. 19(a)(2)(i), (ii); *see also Freeman v. Liu*, 112 F.R.D. 35, 40 (N.D.Ill.1986). Neither requirement was satisfied here. Since both of the joint venturers—VMS and PCA—were parties at the time we made our decision, complete relief could have been accorded the parties even if the Joint Venture was not joined. Likewise, as best as we can discern, the Joint Venture did not have any interests separate from those of VMS and PCA. Proceeding without the Joint Venture would not, "as a practical matter," have impaired or impeded its ability to protect its interests.

Moreover, even had we assumed that the requirements of Rule 19(a) were met, the requirements of Rule 19(b) clearly were not. A court considers Rule 19(b) only after deciding under Rule 19(a) that a person should be joined if feasible. If such a person cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The factors to be considered include:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). Although this list is not exhaustive, and no one factor is determinative, *see Freeman v. Liu*, 112 F.R.D. at 40, the first three factors weighed heavily in favor of proceeding without the Joint Venture. First, we could see no prejudice to the Joint Venture or to the parties they joined, since both joint venturers were before the court. Further, under the second factor, even if there were prejudice, the relief could be shaped to protect the interests of all persons. Finally, since both joint venturers were present, the relief granted would have been adequate. It is true that if we had dismissed, VMS would have had an adequate remedy in the Texas state courts, and possibly in the state courts of Illinois and Oklahoma. But this factor was outweighed by the first three factors, and we therefore concluded that the Joint Venture was not an indispensable party.

We recognize that there is precedent to the contrary. In *Camden Securities Co. v. Lupowitz*, 500 F.Supp. 653 (E.D.Pa.1980), four members of a partnership sued the one remaining partner in federal court with jurisdiction based on diversity. The defendant partner moved to dismiss for failure to join the partnership as an indispensable party. The court concluded under Rule 19(a) that complete relief could not be accorded without the partnership, even though all the partners were present in the litigation. Since the joinder of the partnership would have destroyed diversity jurisdiction, Judge Broderick went on to consider the factors under Rule 19(b). He concluded that it would be impossible to formulate a verdict without the partnership "because we could not ascertain the exact amount of the defendant's financial obligation to the partnership or the amount that the plaintiffs would be entitled to receive from the partnership." *Id.* at 655. It is not clear why this was so. All the members of the partnership were present before the court, and it would seem that the necessary information could have been obtained through discovery. At any rate, the court decided that the partnership was indispensable and dismissed the action.

Other cases, however, have rejected the logic of *Lupowitz* or at least backed away from its holding. In *Whitney v. Citibank, N.A.*, No. 81 Civ. 5832, slip op., 1985 WL 566 (S.D.N.Y. Apr. 19, 1985) [available on Lexis, Genfed Library, Dist. File], the court concluded that a dissolved partnership was not an indispensable party where all the parties were present in the litigation. As the court stated, "there is no reason to question that a judgment rendered in the absence of the partnership would do substantial justice among the parties." The court in *Godine & Stunda, Inc. v. Reading Station Associates Limited Partnership*, No. 89–0514, 1989 WL 49214 1989 U.S. Dist.Lexis 4952 (E.D.Pa. May 3, 1989), reached a similar result.

In our view, the *Whitney* and *Godine & Stunda* decisions provide the more persuasive precedent. Rule 19 does not rely on legal formalism, but on "equity and good conscience." As the Advisory Committee Notes to the 1966 Amendment to Rule 19 suggest, the "decision is to be made in the light of pragmatic considerations." The major pragmatic consideration here was that both joint venturers were present before the court, and that complete relief could be fashioned even in the absence of the Joint Venture. We do not wish to establish an absolute rule here. There may be a case where the interests of the partnership or joint venture are truly separate from those of the partners or joint venturers and where the partnership or joint venture therefrom must be joined for a just adjudication. But that is not the case here, or at least PCA did not show us that it was. We therefore conclude that the Joint Venture was not an indispensable party, the *Lupowitz* case to the contrary notwithstanding.

### III. Is an Accounting a Condition Precedent to this Action?

The defendants also argued that VMS' complaint should be dismissed because VMS failed to bring an action for accounting before suing. According to the defendants, an action for an accounting is a condition precedent to any suit among or between partners. As support for this proposition, the defendants rely on a partnership case, *Mitchell Resort & Enterprises, Inc. v. C & S Builders, Inc.*, 570 S.W.2d 463 (Tex.Civ.App.1978). At one time (or at least in one case), Texas courts had different rules for joint ventures and partnerships with regard to an accounting and held that while an accounting was a prerequisite to an action for damages between partners, it was not a prerequisite to suits between joint venturers. *Champion v. D'Yarmett*, 293 S.W. 587, 588 (Tex.Civ. App.1927). However, later cases have treated partnerships and joint ventures as essentially the same. *See, e.g., Gray v. West*, 608 S.W.2d 771, 776 (Tex.Civ.App. 1980) ("In this case, there is no legal or logical reason for distinguishing a joint adventure from a partnership."). Similar treatment has been the case with regard to accountings. *See, e.g., Thompson v. Duncan*, 44 S.W.2d 904, 907 (Tex.Comm'n.App. 1932) ("It is the general rule that when dealing with partnership or joint venture agreements the remedy ... is in equity for an accounting and settlement of the partnership affairs."). Accordingly, we concluded that the *Mitchell Resort* decision applies to joint ventures as well as partnerships.

But the holding in *Mitchell Resort* has both substantive and procedural aspects and only the substantive aspect was binding on us. The court held that an accounting and settlement—that is, the dissolution—of partnership affairs "is an essential element of a cause of action for damages between partners." *Mitchell Resort*, 570 S.W.2d at 464. This is substantive, and if VMS seeks damages, the dissolution of the joint venture and an accounting of its affairs are necessary.[3]

The *Mitchell Resort* court then held that an action for accounting is a condition precedent to an action for damages. *See id.* at 464–65. Put another way, the action

---

**3.** *Mitchell Resort* does not suggest, however, that an accounting is a prerequisite for the equitable relief that VMS seeks, nor could the state court add a prerequisite to VMS' federal RICO claim. Therefore, the requirement of an accounting at most affects only Counts 5 and 10.

for accounting must be prior to and separate from the action for damages. The defendants rely on this to argue that VMS' complaint should be dismissed. But this aspect of *Mitchell Resort* is procedural only, and we conclude that we need not and should not follow it. The bifurcation between the accounting and the damages action seems to be a vestige of the old dual system of law and equity. Apparently, it was thought that a jury would be unable to unravel the complicated partnership accounts and render an award that reflected the contributions of the various partners and the amounts paid to creditors. Because the remedy at law was inadequate, resorting to the equitable remedy of accounting was necessary. *See Chipley v. Smith*, 292 S.W. 209, 210 (Tex.Comm'n. App.1927); 48A C.J.S. *Joint Ventures* § 46 (1981). It is not clear why the rule continues in Texas, since actions for accounting are often tried to a jury. *See Great National Corp. v. Campbell*, 687 S.W.2d 450, 451 (Tex.Ct.App.1985); *Schwiff v. Priest*, 650 S.W.2d 894, 897 (Tex.Ct.App.1983). But whatever the reason for the rule in Texas, it need not be followed in the federal courts, where the distinction between actions at law and suits in equity was abolished over fifty years ago. *See* Fed.R. Civ.P. 2. We therefore concluded that an action for an accounting was not a condition precedent to VMS' suit, and that the defendants' motion to dismiss, to the extent it was based on this ground, should be denied.[4]

## IV.  Is PCA an Indispensable Party?

■  The day after we decided that the Joint Venture was not an indispensable party, PCA filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas. Thus, under the automatic stay provisions of 11 U.S.C. § 362, VMS may not proceed against PCA in this or any other court until the stay is lifted. We must now consider whether VMS may proceed in PCA's absence.

The answer depends in part on how the underlying action is characterized. If, as VMS contends, the suit is essentially like a tort suit, brought jointly and severally against the various parties, then PCA is not indispensable. As this Court has previously held, complete relief can be "accorded among those already parties," Fed.R. Civ.P. 19(a)(1), since the tortfeasors who remain in the suit would be liable for the full amount of damages. *Hess v. Gray*, 85 F.R.D. 15, 21 (N.D.Ill.1979). On the other hand, if this suit is essentially a suit to remedy a breach of the joint venture agreement, then both joint venturers are probably indispensable. *See Schmidt v. E.N. Maisel & Associates*, 105 F.R.D. 157, 159, n. 1 (N.D.Ill.1985).

We think that the present action is more like a tort suit. To be sure, the first four counts seek injunctive and declaratory relief concerning the joint venture agreement, and the fifth seeks damages for breach of that agreement and a related letter agreement. However, those five counts are directed only at PCA, and VMS cannot proceed on those counts until the bankruptcy stay is lifted. The remaining five counts, which are directed at both PCA and Property Company and its three executives, state claims under RICO (Counts 6 and 7), RICO conspiracy (Count 8), fraud (Count 9) and breach of fiduciary duty (Count 10). As we read those counts of the complaint, VMS alleges that the defendants' actions caused it a single, indivisible injury—an injury that "cannot be apportioned in any sensible way among the several defendants." *Watts v. Laurent*, 774 F.2d 168, 180 (7th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). Therefore, the defendants who are found liable will be jointly and severally liable for the full amount of any damages on these counts. *See Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir.1987), *cert.*

4.  Our June 14 order stated that we denied the defendants' motion to dismiss "to the extent it is based on the failure to join an indispensable party and in the failure to state a claim upon which relief can be granted." This is not alto-

gether correct. We rejected the Rule 12(b)(6) component only to the extent that the defendants claimed that an accounting was a condition precedent. We did not consider the defendants' RICO counts for failure to state a claim.

*denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Watts,* 774 F.2d at 179. Since, as we held in *Hess v. Gray,* complete relief can be accorded even in the absence of the alleged joint tortfeasor, PCA, *Hess,* 85 F.R.D. at 21, PCA is not indispensable.

## V. Should This Case be Transferred to the Northern District of Texas?

In the alternative, Property Company asks us to transfer this case to the Northern District of Texas under 28 U.S.C. § 1404(a).[5] As we have noted recently, a party moving under section 1404(a) must demonstrate that venue is proper in both the transferor and transferee districts, and that transfer serves the convenience of parties and witnesses and the interests of justice. *Reed v. Brae Railcar Management, Inc.,* 727 F.Supp. 376, 380 (N.D.Ill.1989). Both sides agree that venue is proper in this district, but VMS asserts that Property Company has not shown that venue is proper in the Northern District of Texas. We disagree.

█ VMS has relied in part on the RICO venue statute, which provides that a civil action may be instituted against any person in the district "in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). It is clear from the Joint Venture Agreement that Property Company transacts business in Dallas, and that PCA, as successor to Property Company's business, does so as well. In addition, as VMS admits, defendant Beneke resides in Dallas. The defendants have not presented any evidence showing whether defendant Hinch transacts business in the Northern District of Texas. However, he does have a ranch in

Kerrville, which is in the Western District of Texas, where he transacts his affairs or at least can be found. Under 28 U.S.C. § 1392(a), "Any civil action ... against defendants residing in different districts in the same State, may be brought in any of such districts." Thus, since PCA, Property Company and Beneke are deemed to reside in the Northern District of Texas, suit may be brought against Hinch in that district too.

That brings us to defendant Caraway, who resides in Tulsa, Oklahoma, and who, as far as the parties tell us, has no links to Dallas or the Northern District of Texas. However, 18 U.S.C. § 1965(b) provides that when "it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned." Because venue was proper as to at least four of the five defendants in the Northern District of Texas, we think that a court in that district would find that the "ends of justice" require that the fifth defendant be summoned.[6] Accordingly, venue is proper in the Northern District of Texas with respect to the RICO claims.

█ VMS, however, has brought additional state law claims against all of the defendants. Under traditional venue analysis, venue must be independently proper as to each of these claims. *See generally* 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3808 (1986). VMS has relied on the general venue provisions in 28 U.S.C. § 1391. Because VMS' civil action is not based solely on diversity, venue as to the additional claims is proper "only in the judicial district

5. Section 1404(a) provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

6. This application of the jurisdictional aspect of the RICO venue statute raises an interesting question, not addressed by either of the parties, and which we need not address in this opinion. By exercising jurisdiction over a non-resident defendant under this provision, a court could conceivably run afoul of the requisites of due process. Any objection on this ground, how-

ever, would properly belong to the defendant Caraway, who, as far as we can discern, has not yet been served in this action. We note that it remains an open question whether there are due process limitations on the jurisdictional power of the federal courts, operating under a federal jurisdictional statute, similar to the limits on the state courts embodied in the minimum contacts doctrine. *See* Fullerton, *Constitutional Limits on Nationwide Personal Jurisdiction in the Federal Courts,* 79 Nw.U.L.Rev. 1 (1984); 4 Wright and Miller, *Federal Practice and Procedure* § 1067–1, § 1073, at 453–54 (1987).

where all of the defendants reside, or in which the claim arose, except as otherwise provided by law." We recognize that venue based on residence of all defendants would be improper both here and in the Northern District of Texas. VMS has alleged in its complaint that its claims arose in this district. On the other hand, VMS' complaint also contains allegations indicating that its claims might also have arisen either in Oklahoma or Texas. Neither party has adequately addressed this basis for venue. However, we need not resolve the question whether VMS' state law claims might have arisen in the Northern District of Texas for venue purposes.

We find that under the circumstances here it would be appropriate to apply the doctrine of "pendent venue." Under the doctrine of pendent venue, federal courts may exercise their discretion to hear claims as to which venue may be lacking if those claims arise out of a common nucleus of operative facts with claims as to which venue is proper. *Bartel v. F.A.A.,* 617 F.Supp. 190, 197 (D.D.C.1985); *see also Beattie v. United States,* 756 F.2d 91, 100–02 (D.C.Cir.1984). The touchstones in the pendent venue analysis are judicial economy, convenience and fairness. *Beattie,* 756 F.2d at 102. VMS' state law claims unquestionably arise out of the same nucleus of operative facts as VMS' RICO claims. Judicial economy, the convenience of the parties and fairness dictate that the state law claims should be tried together with the RICO claims. We have already determined that venue is proper in the Northern District of Texas with respect to VMS' RICO claims. Since, as we conclude below, the Northern District of Texas is the better forum for resolving this action, we believe that the Texas court would find it appropriate to apply the doctrine of pendent venue to bring all claims before it.

■ That brings us to the last inquiry under section 1404(a), whether the transfer serves the convenience of parties and witnesses and the interests of justice. As is often true in transfer cases, the convenience of the parties favors neither district, since it appears both districts are about

equally convenient or inconvenient. If the case proceeds in this Court, the defendants will be inconvenienced, while if the case is held in the Northern District of Texas, VMS would be inconvenienced.

However, we believe that the complaint itself shows that the convenience of witnesses favors transfer. According to the complaint and the incorporated joint venture agreement, Property Company was a real estate development, construction and management company that conducted business through senior partners, mostly in Texas (Houston, San Antonio and Dallas), but also in Tulsa, Oklahoma; Tampa, Florida; Irvine, California; and Atlanta, Georgia. With the ailing real estate market in Southwestern United States, Property Company found that it needed an infusion of cash to bolster its sagging balance sheet. Consequently, Property Company sought out VMS to enter into a joint venture with the newly formed limited partnership, PCA. To encourage VMS to enter into the joint venture, Property Company and the other defendants allegedly made misrepresentations about their ability to obtain financing, their relations with contractors and suppliers and their ability to succeed in the real estate market. Relying on these misrepresentations, VMS entered into the Joint Venture with PCA to acquire the assets and to succeed to the business of Property Company. Sometime thereafter, according to the complaint, PCA, which was acting as managing partner, threatened to dissolve the Joint Venture or dissipate its assets unless VMS acceded to the defendants' demands.

It seems clear that the non-party witnesses who could testify about Property Company's alleged scheme would, for the most part, be closer to Dallas than to Chicago. To prove or disprove the representations made by the defendants were untrue will require testimony from contractors suppliers and bankers. Since Property Company's business was centered in the Southwest, most of these witnesses will come from the Southwest. Although Property Company also had operations in California, Georgia and Florida, the witnesses concerning these operations would be no

more inconvenienced by Chicago than by Dallas. And certainly the witnesses concerning the operations in Tulsa, Dallas, Houston and San Antonio will find Dallas more convenient than Chicago.

We also conclude that the interests of justice favor transfer. In the Joint Venture agreement, the parties agreed that Texas law would apply. The Supreme Court has identified this as a factor to consider in deciding transfer motions:

> There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). While the choice of law provision in the agreement probably obviates any conflict of law problems, retention of this case would require us to delve into the niceties of Texas commercial and joint venture law. It is better, all in all, to have this case decided by a federal judge more familiar with Texas law than we are. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir.1986) ("In a diversity action, it is ... considered advantageous to have federal judges try a case who are familiar with the applicable state law."); *General Accident Insurance Co. v. Travelers Corp.*, 666 F.Supp. 1203, 1207 (N.D.Ill.1987) (Aspen, J.). Accordingly, we will grant the defendants' motion to transfer under section 1404(a).

■ VMS seems to contend, however, that the defendants cannot seek transfer to the Northern District of Texas because the Northern District of Oklahoma (Tulsa) would be even more convenient. It is true that Property Company and PCA have their principal places of business in Tulsa, and presumably most of their records that would be pertinent to this litigation are in that city. In addition, some of Property Company's suppliers and contractors may be found in Tulsa. But even assuming that the Northern District of Oklahoma is the most convenient district, we do not read

section 1404(a) to prevent transfer to a more convenient district because it is not the most convenient district. It would be wholly anomalous to say that this case cannot be transferred to Dallas, because Tulsa is more convenient than Dallas, even though Dallas is more convenient than Chicago. Even if more records and witnesses are found in Tulsa than in Dallas, we take judicial notice that Tulsa is much closer to Dallas than to Chicago. We therefore think transfer is appropriate in this case.

VI. Conclusion

For the reasons set forth above, we withdraw our order of June 14, 1989, and issue the following order in its place, *nunc pro tunc* June 14, 1989:

> The defendants' motion to dismiss, to the extent it is based on the failure to join an indispensable party and to the extent that it is based on the failure of VMS to bring an accounting, is denied. The remainder of the motion and rest of the outstanding motions are taken under advisement. It is so ordered.

In addition, the defendants' second motion to dismiss for failure to join an indispensable party is denied. The motion to transfer this action under 28 U.S.C. § 1404(a) to the Northern District of Texas is granted. It is so ordered.