**James BROWN and Fishing Fun Magazine, Appellants (Defendants below),**

v.

**OWEN LITHO SERVICE, INC., Appellee (Plaintiff below).**

**No. 2–976A363.**

Court of Appeals of Indiana, Second District.

Jan. 24, 1979.

Howard J. DeTrude, Jr., John W. Cotner, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellants.

George B. Mathes, Languell & Mathes, Spencer, for appellee.

SULLIVAN, Judge.

James J. Brown appeals from an adverse judgment entered after a bench trial in which he was held personally liable to Owen Litho Service, Inc. (Owen Litho) for what Brown claims to be the debts of J. J. Brown Publishing, Inc. (the Corporation). Brown contends that he incurred the debts while acting as officer and agent for the Corporation and therefore should be absolved from personal liability. The central issue on appeal is whether Brown revealed the capacity in which he contracted, i. e., whether Brown was acting on behalf of an undisclosed principal.

The defense of agency in avoidance of contractual liability is an affirmative defense and the burden of establishing the disclosure of the agency relationship and the corporate existence and identity of the principal is upon he who asserts an agency relationship. *Vawter v. Baker* (1864) 23 Ind. 63; Ind.Rules of Procedure, Trial Rule 8(C). Thus, Brown's appeal is from a negative judgment, which may be reversed only if the evidence leads unerringly to but one conclusion, contrary to that reached by the trial court. *Dreilbelbis v. Bennett* (3d Dist.1974) 162 Ind.App. 414, 319 N.E.2d 634, 638. In order to justify reversal, we must find that the evidence and inferences therefrom are without conflict and that the existence and identity of the Corporation as well as the character in

which Brown acted were disclosed to Owen Litho at the time of contracting.

The evidence most favorable to the judgment discloses a series of transactions between Brown and Owen Litho for the printing of at least four issues of Brown's "Fishing Fun" magazine. Wayne Hicks, one of Owen Litho's salesmen, testified that he had heard Brown was a "prospect for a sale" and therefore called on Brown at his Speedway home. Brown expressed interest in Owen Litho's services and asked for an estimate of the cost involved in printing the magazine. As a result of these negotiations, the parties reached an oral agreement for Owen Litho to perform these services. Hicks testified that his dealings with Brown were conducted in Brown's home, that there were no signs or other indications that Brown's home served as a corporate office, and that he was not informed at any time that Brown was agent for the Corporation or even that the Corporation existed. In fact, Hicks testified, Brown represented that he owned the magazine.

The record indicates that Owen Litho printed four issues of "Fishing Fun": one each for August and September, 1973, and two combined issues for the months of October/November and December/January (1974). Full payment was remitted for the September issue (invoiced August 30, 1973) with a check dated September 21, 1973, and half payment for the August issue (invoiced July 30) with a check dated November 19, 1973.

Brown disputed Hicks' testimony, contending that he made full disclosure of his agency and the existence and identity of his principal before an agreement was reached. Recognizing that the trial judge was free to disbelieve this testimony, see *Neel v. Cass Co. Fair Assoc.* (1968) 143 Ind.App. 339, 240 N.E.2d 546, 552, Brown points to three pieces of documentary evidence which, he contends, establish disclosure as a matter of law.[1]

The first two documents are the checks by which his account was partially paid. The checks were drawn on the Corporation's account with the printed words "J. J. Brown Publishing, Inc." appearing in the upper left hand corner. Directly below this line is an address in Speedway which is Brown's residence. The checks were signed by two persons—Brown and an officer of the Corporation. However, neither signator designated his position with the Corporation and there is no indication on the face of the checks of the capacity in which each person signed.

Brown also points to a letter he received from Owen Litho which was addressed to the Corporation. Apparently, J. J. Brown Publishing, Inc. was organized as a not-for-profit corporation, exempt from the payment of sales tax. See I.C. 6–2–1–39(b)(8) (Burns Code Ed. 1978). Brown had submitted his exemption number but had failed to include a signed certificate of exemption. The letter from Owen Litho acknowledged and thanked Brown for payment and requested that the signed exemption certificate be returned. John Blair, general manager and president of Owen Litho, testified that though his name appears as signator to the letter, the handwriting is that of his secretary, who was authorized to conduct routine transactions such as this one, under Blair's name. Blair theorized that the letter was addressed and sent to the Corporation because that information was on the check that had been received. It is important to note that this letter is the *only* correspondence sent to the Corporation. All other correspondence was addressed to James Brown or "Fishing Fun Magazine."

Brown contends that this evidence establishes that Owen Litho had "constructive knowledge" of Brown's agency and the existence and identity of his principal. Thus,

---

1. Brown does not press the contention that the publication's "masthead" (which states "Copyright 1973 by J. J. Brown Publishing, Inc.") sufficiently disclosed his agency relationship with the Corporation. Indeed, the transcript of testimony reveals that Owen Litho had no rea-

son to examine the magazine's copy. The procedure employed by the parties was for Brown to paste his copy on cardboard and submit it to Owen Litho, who photographed this "camera ready art." It was Brown's responsibility, not Owen Litho's, to present copy that was correct.

it is argued, the trial court's decision is contrary to law.

 It is well-established that an agent, in order to avoid personal liability, must, at the time of contracting, disclose both the capacity in which he acts and the existence and identity of his principal. *Polk v. Haworth* (1911) 48 Ind.App. 32, 95 N.E. 332, 333. It is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the existence and identity of the principal. *Vander Wagen Bros., Inc. v. Barnes* (1973) 15 Ill.App.3d 550, 304 N.E.2d 663, 665; *Mawer-Gulden Annis, Inc. v. Brazilian and Columbian Coffee Co.* (1964) 49 Ill.App.2d 400, 199 N.E.2d 222, 225.[2] It is not the duty of third persons to seek out the identity of the principal. Rather, the weight of authority holds that the duty to disclose the identity of the principal is upon the agent. *Myers-Leiber Sign Co. v. Weirich* (1966) 2 Ariz.App. 534, 410 P.2d 491, 493.[3] Thus, unless the third person knows or unless the facts are such that a reasonable person would know of the principal's existence and identity, the agent must be held to be acting for an undisclosed principal and is held liable in the same manner as if he were the principal. Actual knowledge brought by the agent or, what is the same thing—that which to a reasonable man is equivalent to actual knowledge—is the criterion of the law. *Howell v. Smith* (1964) 261 N.C. 256, 134 S.E.2d 381, 384.

Most jurisdictions hold that disclosure which occurs subsequent to the execution of a contract has no bearing upon the relations created at the time of the transaction and will not relieve the agent from personal liability.[4] *Myers-Leiber Sign Co. v. Wierich, supra; Olympic Electric Service, Inc. v. Craig* (1973) La.App., 286 So.2d 182; *Carter v. Walton* (1971) Tex.Civ.App., 469 S.W.2d 462.

██ Whether a principal is disclosed, partially disclosed or undisclosed depends upon the representations of the agent and the knowledge of the third party at the time of the transaction. Thus, disclosure is essentially a question of fact to be determined by the facts and circumstances surrounding the transaction. *Chambliss v. Hall* (1966) 113 Ga.App. 96, 147 S.E.2d 334, 338; *Matsko v. Dally* (1956) 49 Wash.2d 370, 301 P.2d 1074, 1077; *Carter v. Walton, supra; Myers-Leiber Sign Co. v. Wierich, supra; Barrett v. Rumeliote, supra;* 3A *Fletcher Cyc. Corp., supra,* § 1133.

The existence of a check or checks drawn on a corporate account as it relates to the issue of disclosure has not received a great deal of judicial attention. However, Louisiana courts have not been receptive to the contention that such a check constitutes disclosure of the agency and the existence and identity of the principal. *Olympic Electric Service, Inc. v. Craig, supra; Darr v. Kinchen* (1965) La.App., 176 So.2d 638, cert. den. 248 La. 386, 178 So.2d 664; *Gaglio v. Lunsford* (1964) La.App., 165 So.2d 60; *Wilson v. McNabb* (1963) La.App., 157 So.2d 897. In *Diamond Match Co. v. Crute, su-*

---

**2.** As the court noted in *Orient Mid-East Lines v. Albert E. Bowen, Inc.* 2d Cir. 1972) 458 F.2d 572, 577 (construing New York law):

"It is probably true . . . that if [plaintiff] had made inquiry, he could readily have learned the name of [defendant]'s principal. Conversely, we can see no good reason why [defendant] should not have disclosed the name of [his] principal . . . . By so doing the 'harsh application' of the principles of law pertaining to undisclosed principals of which appellant complains, could have been avoided."

**3.** See also *Tarolli Lumber Co., Inc. v. Andreassi* (1977) 59 A.D.2d 1011, 399 N.Y.S.2d 739; *Chartres Corp. v. Twilbeck* (1974) La.App., 305 So.2d 730; *Cooper v. Hileman* (1974) S.D., 222

N.W.2d 299; *Orient Mid-East Lines v. Albert E. Bowen, Inc., supra,* note 2; *Anderson v. Smith* (1965) Tex.Civ.App., 398 S.W.2d 635; *Barrett v. Rumeliote* (1964) 256 Iowa 1, 126 N.W.2d 322; *Lange v. Baker* (1964) Mo.App., 377 S.W.2d 5; *Diamond Match Co. v. Crute* (1958) 145 Conn. 277, 141 A.2d 247; 2 *Williston on Contracts* § 288 (3d Ed. 1959); 3A *Fletcher Cyc. Corp.* § 1120 (1975 Rev.).

**4.** Thus, even were we to accept Brown's contention that the documentary evidence establishes disclosure, it would relieve him from personal liability only for transactions subsequent to the time of disclosure. See *Revere Press, Inc. v. Blumberg* (1968) 431 Pa. 370, 246 A.2d 407.

*pra,* the Connecticut Supreme Court held that payment made by seven checks drawn on the corporate account was not sufficient notice of agency: "The defendant made no attempt to have the plaintiff charge or bill the corporation instead of himself." 141 A.2d at 248. It was the defendant's credit, not the corporation's, on which the plaintiff had relied. *Id.* See also *Howell v. Smith, supra; Tarolli Lumber Co., Inc. v. Andreassi, supra.*[5]

 These cases indicate to us that it is neither possible nor desirable to announce a rigid rule of law identifying specific facts that constitute "full disclosure." Disclosure is a question of fact to be treated as such by the reviewing court. Where the facts proved allow reasonable men to draw opposing inferences, the trier of fact's decision must be affirmed. *State Farm Life Ins. Co. v. Spidel* (1964) 246 Ind. 458, 202 N.E.2d 886, 889. This rule is a corollary to our basic standard of review, which requires that the evidence and reasonable inferences therefrom be viewed in the light most favorable to the judgment. *Palmer v. Decker* (1970) 253 Ind. 593, 255 N.E.2d 797, 798. It is only where the evidence and inferences are without conflict and lead to but one conclusion, contrary to that reached by the trier of fact, that the judgment will be reversed as contrary to law. *Statesman Ins. Co. v. Reibly* (2d Dist. 1978) Ind.App., 371 N.E.2d 414, 417.

 Though it is true that Brown's documentary evidence is undisputed, the inferences to be drawn therefrom are contested. Under these facts, a trier of fact could reasonably conclude that Owen Litho did not know or that a reasonable person would not have known of Brown's agency and the existence and identity of his principal. Certainly we cannot say, as a matter of law, that Owen Litho knew or that a reasonable person would have known that Brown was at all times acting as agent for the Corpora-

tion. To reverse the judgment as contrary to law would require that we accept Brown's implied contention that *no* reasonable trier of fact could conclude that the documentary evidence *failed* to disclose the agency relationship. We cannot do so because reasonable minds could differ as to the inferences to be drawn from the evidence. Given these facts, we must scrupulously avoid invading the province of the trier of fact by substituting our judgment for that of the trial court. *In Re Marriage of Patus* (3d Dist.1978) Ind.App., 372 N.E.2d 493, 495.

The judgment is affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.

---

**5.** But see *Potter v. Chaney* (1956) Ky.App., 290 S.W.2d 44, wherein it was held that because the corporation was in existence at the time of the transaction and checks in payment for goods sold were given over a period of four years, always drawn on the corporate account and signed by the defendant in his capacity as president, the defendant had fully revealed his agency.