Arthur JENSEN, Petitioner,

v.

**ALASKA VALUATION SERVICE, INC., Respondent.**

No. S–86.

Supreme Court of Alaska.

Aug. 24, 1984.

Timothy Byrnes, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for petitioner.

Lewis Gordon, Baily & Mason, Anchorage, for respondent.

Before BURKE, C.J., and RABINOWITZ, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

In this petition we are asked to decide whether the use of corporate checks is sufficient, in and of itself, to inform the recipient of the checks that it deals with a corporation rather than an individual. Although the monetary value of this case is inconsequential, we agreed to hear it because the question at issue is likely to recur. Alaska R.App.P. 304. We hold that the question is ultimately one of fact, and conclude that the trial court did not err in finding that in this case corporate checks did not provide sufficient notice of the existence of a corporation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Arthur Jensen, Inc. was an Alaska corporation, incorporated in 1972, engaged in the housing construction business. Arthur Jensen owned over half of the corporation's stock and served as its president. The corporation became insolvent in 1980.

Alaska Valuation Service (AVS) conducted appraisals for Arthur Jensen from the early 1970s until 1979. On July 19, 1979, Jensen ordered by telephone appraisals on five single family homes. AVS was to appraise these residences from plans and blueprints rather than from an actual inspection of the sites. AVS's president, Alfred Ferrara, who took the order, recorded it as being for "Art Jensen." Invoices for the appraisals were later sent to "Art Jensen, Jensen Builders" at the corporation's Anchorage post office box address. Arthur Jensen, Inc. was not mentioned in AVS's records until late 1979, when Jensen specifically informed AVS of his company's corporate status. Thereafter, a statement of lien filing fee was addressed to Arthur Jensen, Inc. The appraisals were completed but never paid for.

In 1982, AVS filed a complaint for $823.00 against Jensen in small claims court. Jensen admitted the amount of the debt, but denied any personal liability. At trial, Ferrera testified that he had not been aware that Jensen was doing business as a corporation until late 1979. He stated that AVS's records had always shown Jensen as "Arthur Jensen, Jensen Builders," and that he had assumed that the company was a sole proprietorship. He claimed that "[i]t's just not typical ... for most of the builders we do business with to be corporations," and that it had not occurred to him that Jensen might be incorporated.

Jensen testified that he had always paid for appraisal services with the corporation's checks, and introduced four checks dated prior to July 1979 into evidence. He also testified that he placed signs with the corporation's name on each of the houses he built. He conceded, however, that appraisals were completed before construction on the houses began. He testified that he could not think of anything besides the checks which might have put AVS on notice that it was dealing with a corporation.

The small claims court concluded that "just writing checks after the fact to a bookkeeper" did not provide AVS with adequate notice of Arthur Jensen's position as an agent of a corporation. It awarded AVS $831.00.

Jensen appealed the decision to superior court and requested leave to submit the contractor's plans from which the appraisals were made. He alleged that these plans contained information identifying Arthur Jensen, Inc., and would have given AVS notice that it was dealing with a corporation before the actual appraisals could be done. The superior court affirmed the district court ruling without mentioning the request to supplement the record.

In his petition for hearing, Jensen asks that we hold that payments to a creditor by corporate checks over the course of several years adequately notifies that creditor of a company's corporate status.

## II. JENSEN'S LIABILITY AS AN AGENT FOR AN UNDISCLOSED PRINCIPAL

▇▇▇ Although officers of a corporation will not ordinarily be held personally liable for contracts they make as agents of the

corporation, they must disclose their agency and the existence of the corporation before they will be absolved from liability. *McCluskey Commissary, Inc. v. Sullivan,* 96 Idaho 91, 524 P.2d 1063, 1065 (1974); 314 W. Fletcher, Cyclopedia of the Law of Private Corporations § 1120, at 183 (rev. ed. 1975). An agent who makes a contract for an undisclosed or partially disclosed principal will be liable as a party to the contract. Restatement (Second) of Agency, §§ 321, 322 (1958).[1] Thus, Jensen can avoid liability only if his use of corporate checks disclosed the existence of Arthur Jensen, Inc. and Jensen's intention to contract on its behalf.

An agent who attempts to avoid liability on a contract has the burden of proving that the agency relationship and the identity of the principal were in fact disclosed. *Diamond Match Co. v. Crute,* 145 Conn. 277, 141 A.2d 247, 249 (1958); *Brown v. Owen Litho Service, Inc.,* 179 Ind.App. 198, 384 N.E.2d 1132, 1133 (1979).[2] A third party with whom the agent deals is not required to inquire whether the agent is acting for another. *Diamond Match Co.,* 141 A.2d at 248–49; *see also Mawer-Gulden-Annis, Inc. v. Brazilian and Colombian Coffee Co.,* 49 Ill. App.2d 400, 199 N.E.2d 222, 225 (1964).

The third party will be held to have notice of the agency relationship, however, "if he knows [about it], has reason to know [about] it, should know [about] it, or has been given notification of it." Restatement (Second) of Agency § 9 (1958).

The question before us, then, is whether Jensen's continuing use of corporate checks gave AVS "reason to know" about the existence of Arthur Jensen, Inc. Courts in a number of jurisdictions have considered similar questions and reached varying conclusions. The holdings of these courts have fallen into three categories: 1) that use of corporate checks is sufficient, as a matter of law, to provide notice; 2) that it is insufficient as a matter of law; and 3) that the question is one of fact which must be decided by the court.

The first category of holdings is best exemplified by *Potter v. Chaney,* 290 S.W.2d 44 (Ky.App.1956). In that case, the defendant was president of a coal company which bought coal from the plaintiff over the course of four years and paid him with corporate checks. The court held that the corporation's existence before the plaintiff began delivering coal and its consistent use of corporate checks were sufficient, as a matter of law, to have put the seller on

1. Disclosed, partially disclosed, and undisclosed principals are defined in the Restatement as follows:
   (1) If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is a disclosed principal.
   (2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal.
   (3) If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal.
   Restatement (Second) of Agency § 4 (1958)

2. Jensen argues that the Restatement places a strong evidentiary burden on a party seeking to hold an agent personally liable. He reaches this conclusion by reading together § 328, which provides that "[a]n agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its

performance;" § 4's definition of a partially disclosed principal (one whom the other party has notice "may be acting for a principal"); and § 9's definition of notice ("A person has notice of a fact if he ... has reason to know it"). He concludes from these sections that an agent should be absolved from liability whenever the other party "has reason to know" that he or she "may be" acting for a principal.

Jensen's argument is contradicted by the Restatement as well as by case law. Under Restatement § 321, "[u]nless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal *is* a party to the contract" (emphasis added). Sections 321 and 328 can be reconciled if we assume that an agent is personally liable unless he or she makes it clear that he or she is acting on behalf of a principal (whether or not the principal's identity is disclosed). Thus a holding that an agent has the burden of showing that the other party had reason to know of his or her agency is consistent with the Restatement.

notice that the buyer transacted business with it on behalf of a corporation.[3]

The Louisiana Court of Appeals reached the opposite conclusion in *Jahncke Service, Inc. v. Heaslip,* 76 So.2d 463 (La.App.1954). In that case, the defendant conducted business with the plaintiff over the course of several years, and incorporated during that time. He argued that his use of corporate checks should have put the defendant on notice that it dealt with a corporation rather than with an individual. The court held that the use of five or six corporate checks did not provide the plaintiff with legally sufficient notice to relieve the corporation's agent of liability.

Most courts that have considered arguments that the consistent use of corporate checks provided notice of agency have reached their decisions only after examining the surrounding facts and circumstances. In *Diamond Match Co. v. Crute,* 145 Conn. 277, 141 A.2d 247 (1958), and *Brown v. Owen Litho Service, Inc.,* 179 Ind.App. 198, 384 N.E.2d 1132 (1979), the courts refused to overturn trial court findings that corporate officers had not provided sufficient notice that they acted as agents despite their use of corporate checks prior to the transactions at issue. In *Diamond Match Co.,* the president of a corporation paid for lumber with corporate checks, though invoices were made out to him personally and sent to his home (which was also the office of the corporation). In *Brown,* an officer of a publishing corporation carried on negotiations in his home for the printing of the corporation's magazine but made all payments with corporate checks. Both courts took special note of the agents' failure to call the third party's attention to the existence of a corporation. *Diamond Match Co.,* 141 A.2d at 248; *Brown,* 384 N.E.2d at 1134.

■ We conclude that the third category of holdings—that the question of whether an agent's use of corporate checks provides sufficient notice of the corporation's existence is a factual one—is best supported by case law and by reason. We agree with the *Brown* court's conclusion that "it is neither possible nor desirable to announce a rigid rule of law identifying specific facts that constitute 'full disclosure.' Disclosure is a question of fact to be treated as such by the reviewing court." 384 N.E.2d at 1136.

Ordinarily, the question of whether a corporate agent acts for a disclosed or an undisclosed principal is one of fact. *Myers-Leiber Sign Co. v. Weirich,* 2 Ariz.App. 534, 410 P.2d 491, 493 (1966); *Matsko v. Dally,* 49 Wash.2d 370, 301 P.2d 1074, 1077 (1956). An agent's use of corporate checks is one factor for the trier of fact's consideration, but it is not necessarily determinative. The reasonableness of a third party's failure to deduce the existence of a corporate principal from its agent's use of corporate checks varies from case to case. In *Brown,* for example, where all meetings took place in the agent's house, and the transaction at issue involved the printing of four issues of a new magazine, a court could reasonably conclude that the third party had insufficient notice of the corporation's existence. In *Potter v. Chaney,* on the other hand, where the transactions took place entirely in the corporation's offices, the corporation involved was a coal distributor, and $170,000 changed hands, the existence of the corporation was much more evident from the circumstances surrounding the use of corporate checks. We see no reason to attempt to fashion a rule of law which assumes that corporate checks provide equivalent notice in such widely differing factual settings.

■ Since we have determined that the small claims court's finding that Jensen did not sufficiently disclose his agency is one of fact, we will not disturb it unless it is clearly erroneous. Alaska R.Civ.P. 52(a); *Black v. Dahl,* 625 P.2d 876, 881 (Alaska

---

**3.** The *Chaney* court also noted that the seller had received weight receipts with the corporation's name on them and had visited the corporate offices. It held, however, that the checks and the longstanding corporate existence, "standing alone," provided sufficient notice. *Id.* at 46.

1981).[4] At trial, AVS's president testified that most builders he dealt with were not incorporated, and that he had done business with Jensen for many years without being aware that he represented a corporation. In light of this testimony we cannot say that the trial court clearly erred in finding that Jensen's use of corporate checks did not provide AVS with notice of his company's corporate status.

## III. SUPPLEMENTATION OF THE RECORD

In his appeal to superior court, Jensen moved to supplement the record with the plans from which AVS performed the appraisals. These plans, which identified Arthur Jensen, Inc. as the builder, were not introduced at trial. Jensen urges us to remand for consideration of the plans if we find that the corporate checks provided insufficient notice of the corporation's existence.

 Jensen placed his order for the appraisals by telephone, and submitted the plans to AVS sometime thereafter. AVS thus did not see the plans until after it had agreed to perform the appraisals. An agent is liable for a contract he or she enters into unless the principal is disclosed at the time the contract is formed. *Potter v. Chaney*, 290 S.W.2d at 46. As comment c to the Restatement (Second) of Agency § 4 notes:

> Whether a principal is a disclosed principal, a partially disclosed principal or an undisclosed principal depends upon the manifestations of the principal or agent and the knowledge of the other party *at the time of the transaction*. The disclosure of the existence or identity of the principal subsequently has no bearing upon the relations created at the time of the transaction. [Emphasis added].

 Jensen argues that the plans were incorporated by reference into the contract, since AVS' order form notes that the ap-

praisals were to be made "from plans." This argument is without merit. We are not concerned here with the integral parts of the contract, but with AVS' knowledge when it entered that contract. The plans had no bearing on AVS' actual or constructive notice of the existence of Arthur Jensen, Inc. at the time of the contract, since AVS did not see them until *after* the contract was formed. Hence, there is no need for remand to allow consideration of the plans.

AFFIRMED.

---

4. Jensen argues that a clearly erroneous standard is not appropriate in this case, since small claims judgments need not be supported by findings of facts, and since the trial court made no written findings in this case. The trial court's findings were sufficiently clear to allow us to review them, and we will not disturb them absent clear error.