**CARLSON WAGONLIT TRAVEL, INC., Appellant–Defendant,**

v.

**David and Shannon MOSS, Steven and Bonnie Moss, and John and Karen Stieneker, Appellees Plaintiffs.**

No. 73A01–0206–CV–210.

Court of Appeals of Indiana.

May 16, 2003.

John D. Waller, Jason K. Bria, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Appellant.

John C. DePrez, Brown, Linder & De-Prez P.A., Shelbyville, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant Carlson Wagonlit Travel, Inc. (Carlson Travel) appeals the trial court's judgment entered in favor of appellees-plaintiffs David and Shannon Moss, Steven and Bonnie Moss, and John and Karen Stieneker. Carlson Travel contends that it acted on behalf of a disclosed principal, and, therefore, it is not liable for the principal's breach of contract with the plaintiffs. Concluding that Carlson Travel disclosed United's existence and identity and its role as United's agent, we reverse.

### FACTS

Three couples, the plaintiffs in this cause, planned to take a cruise to Hawaii. In September 2001, Shannon initiated the travel plans when she went to Carlson Travel to inquire about "booking" a cruise. Appellant's App. p. 16. She met with Shawn Stader, who was a travel agent for Carlson Travel, and the two discussed travel options. In doing so, Shannon and Stader reviewed the brochures of different cruise lines. Shannon ultimately selected United States Cruise Lines (United) because it was "the most economical" and would allow "the most time on the islands." Appellant's App. p. 17. The cruise package included hotel accommodations and airfare. Shannon was not under the impression that Carlson Travel owned United.

Bonnie, Shannon's sister-in-law, also looked over the brochures and decided to go on the same cruise as Shannon and her husband. Bonnie gave Shannon the $625 deposit necessary to book the cruise. Shannon took Bonnie's deposit and her own to Carlson Travel. After Shannon and Bonnie booked the cruise, Karen visited Carlson Travel and spoke to Stader about the cruise. Stader showed Karen a brochure for the cruise ship. Karen booked the cruise that same day and gave her a $625 deposit.

All three couples paid their deposits by check. Carlson Travel deposited the checks into its account. Then Carlson Travel wrote two checks totaling $1,800 drawn from the same account and sent them to United. United required the $600

per couple to hold the cabins and lock in the rate. Carlson Travel retained a $25 service fee from each couple.

The entire cruise package was to last from March 22, 2002, through March 30, 2002. However, in mid-October 2001, United filed for bankruptcy and cancelled the cruise. Carlson Travel informed the plaintiffs of United's bankruptcy and cancellation of the cruise. Carlson Travel also forwarded the plaintiffs' names and booking numbers to the claims agent for the Chapter 11 bankruptcy for a refund of the deposits. United, as of the date of the judgment, has not done so.

On November 21, 2001, the plaintiffs filed their respective Notices of Small Claim. Each couple requested judgment in the amount of $625 for the deposit plus $39 in court costs. Three months later, the plaintiffs and Carlson Travel appeared for a bench trial. The plaintiffs argued that Carlson Travel had not disclosed that it was an agent for United and therefore it was responsible for the unrefunded deposits. Carlson Travel, on the other hand, maintained that it had disclosed its agency relationship with United and therefore was not liable for the unrefunded deposits. The small claims court later rendered judgment in favor of each couple. Carlson Travel now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

■ The defense of agency in avoiding contractual liability is an affirmative defense, so the burden of establishing the disclosure of the agency relationship and the existence and identity of the principal is on the party asserting the affirmative defense. *Brown v. Owen Litho Serv., Inc.,* 179 Ind.App. 198, 199, 384 N.E.2d 1132, 1133 (1979). Because Carlson Travel had the burden of proof on this issue and the

small claims court found against it, Carlson Travel received a negative judgment. *See Criss v. Bitzegaio,* 420 N.E.2d 1221, 1225 (Ind.1981). A negative judgment may be reversed on appeal only "when the evidence is without conflict and leads to but one conclusion and the trial court reached an opposite conclusion." *Hebel v. Conrail, Inc.,* 475 N.E.2d 652, 662 (Ind. 1985). More specifically, in order to justify reversal, "we must find that the evidence and inferences therefrom are without conflict and that the existence and the identity" of United "as well as the character in which" Carlson Travel acted "were disclosed to [the plaintiffs] at the time of contracting." *Owen Litho,* 179 Ind.App. at 199, 384 N.E.2d at 1134.

#### II. Carlson Travel's Claim

■ Carlson Travel contends that the evidence and inferences therefrom are without conflict and lead to one conclusion: Carlson Travel disclosed the existence and identity of United as the principal and its role as United's agent. Generally, in Indiana, "where an agent discloses the identity of his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally bound by the contract unless the agent agrees to be so bound." *Boesch v. Marilyn M. Jones & Assocs.,* 712 N.E.2d 1061, 1062 (Ind.Ct.App.1999), *trans. denied.* In *Brown v. Owen Litho Services,* this court set forth the evidence necessary to prove the affirmative defense of disclosure of agency and avoid contractual liability:

It is well-established that an agent, in order to avoid personal liability, must, at the time of contracting, disclose both the capacity in which he acts and the existence and identity of his principal. It is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the existence and iden-

tity of the principal. It is not the duty of third persons to seek out the identity of the principal. Rather, the weight of authority holds that the duty to disclose the identity of the principal is upon the agent. Thus, unless the third person knows or *unless the facts are such that a reasonable person would know of the principal's existence and identity, the agent must be held to be acting for an undisclosed principal and is held liable in the same manner as if he were the principal.* Actual knowledge brought by the agent or, what is the same thing that which to a reasonable man is equivalent to actual knowledge is the criterion of the law.

*Id.* at 201–02, 384 N.E.2d at 1135 (citations and footnotes omitted) (emphasis added).

 First, the plaintiffs in the instant case knew of United's existence and identity. Shannon testified that she reviewed the brochures of different cruise lines and chose United. She knew the existence and identity of United because she chose the cruise line herself. Bonnie also testified that the she looked over brochures and decided to join Shannon on the United cruise. Likewise, Karen visited Carlson Travel, reviewed United's brochure, and decided to book the cruise.

Second, the plaintiffs knew of Carlson Travel's role as United's agent. When Shannon was asked by her own attorney whether she had booked the cruise "through Carlson," she responded, "Yes." Appellant's App. p. 17. Karen testified that she knew Carlson Travel did not own the cruise line and was a travel agent:

Q: Did you believe that Carlson Wagonlit Travel owned and operated a cruise ship?

A: No, I didn't think about it. I didn't think, I wouldn't think so.

. . . .

Q: Did you know that Carlson Wagonlit was a travel agency?

A: Yes.

Appellant's App. p. 32–33.

The plaintiffs counter that the following evidence and reasonable inferences therefrom point to the nondisclosure of United's existence and identity and the nondisclosure of Carlson Travel's role as United's agent. First, during cross-examination by plaintiffs' counsel, Stader was asked whether the United brochure mentioned that Carlson Travel was an agent for the cruise line. Stader answered that she was not aware that the brochure indicated that Carlson Travel was an agent for the cruise line. Second, Carlson Travel sent the plaintiffs an itinerary invoice, which made no indication that the deposits paid to Carlson Travel were transferred to United. Third, the plaintiffs were surprised when Carlson Travel refused to refund their deposit or book them on another cruise when United declared bankruptcy.

This evidence and the *reasonable* inferences therefrom are not in conflict with the plaintiffs' own testimony that they knew of United's existence and identity and Carlson Travel's role as agent. The brochures themselves identified United as a separate entity from Carlson Travel. Moreover, the itinerary invoices only confirmed that the plaintiffs were booking the cruise "through Carlson." The plaintiffs knew that Carlson Travel did not own and operate the cruise line. Finally, though we sympathize with the plaintiffs' surprise that Carlson Travel would not refund the deposits or book them on another cruise, their dismay is with the liability consequences of the agency relationship—not the unexpected revelation of the agency relationship.

In sum, the evidence and the reasonable inferences therefrom are without conflict and lead to the conclusion that Carlson

Travel disclosed the existence and identity of United and its role as an agent for United. *See Owen Litho,* 179 Ind.App. at 199, 384 N.E.2d at 1134. The facts are such that a reasonable person would have known of the existence and identity of United and Carlson Travel's role as an agent for United. Indeed, the plaintiffs themselves—like their hypothetical counterpart, the reasonable person—knew of the existence and identity of United and Carlson Travel's role as agent for United. Therefore, as an agent of a disclosed principal, Carlson Travel is not liable for United's breach of contract.

Judgment reversed.

SULLIVAN and DARDEN, JJ., concur.