## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 02 2017, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Beth L. Brown
Kelly Law Offices
Crown Point, Indiana

Lawrence R. Lassiter
Miller Weisbrod, LLP
Dallas, Texas

ATTORNEYS FOR APPELLEES/CROSS APPELLANTS NAVISTAR, INC. AND RUSH TRUCK CENTERS OF INDIANA, INC.

Timothy V. Hoffman
Sanchez Daniels & Hoffman LLP
Chicago, Illinois

Clayton J. Callen
Jeffrey S. Patterson
Harline Dacus Barger Dreyer LLP
Dallas, Texas

ATTORNEY FOR APPELLEES/CROSS APPELLANTS CHICAGO INTERNATIONAL TRUCKS, LLC and CIT, INC.

Daniel J. Offenbach
Leahy, Eisenberg & Fraenkel, Ltd.
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

Illini State Trucking, Inc. a/k/a
IST Holdings, LLC, and RLB
International, LLC,

*Appellants-Plaintiffs/Cross Appellees,*

v.

Navistar, Inc., Rush Truck
Centers of Indiana, Inc. f/k/a
Chicago International Trucks,
LLC, Chicago International
Trucks, LLC, and CIT, Inc.
d/b/a Chicago International
Trucks,

*Appellees-Defendants/Cross Appellants*

June 2, 2017

Court of Appeals Case No.
45A03-1608-PL-1860

Appeal from the Lake County
Superior Court

The Honorable Calvin D. Hawkins,
Judge

Trial Court Cause No.
45D02-1505-PL-39

**Vaidik, Chief Judge.**

# Case Summary

Illini State Trucking, Inc. and RLB International, LLC (collectively, "Illini")
appeal the trial court's dismissal of their claims of fraud and fraudulent
concealment against Navistar, Inc. (Navistar), Chicago International Trucks,
LLC and CIT, Inc. (collectively, "Chicago International"), and Rush Truck
Centers of Indiana, Inc. (Rush). Navistar and Chicago International cross-
appeal the trial court's denial of their motions to dismiss Illini's claims of

breach of express warranty, breach of implied warranty, and breach of contract. We affirm the decision of the trial court in all respects.[1]

# Facts and Procedural History

These appeals arise from the trial court's order on motions to dismiss Illini's Third Amended Complaint (Complaint) against Navistar, Chicago International, and Rush. Illini is a trucking company, Navistar is a truck manufacturer, and Chicago International and Rush are truck sellers and servicers. The factual allegations in the Complaint, which we must accept as true for purposes of the defendants' motions to dismiss, can be summarized as follows.

Navistar set out to develop engines that would comply with the EPA's 2010 emission standards in a unique way. According to Illini, "other" manufacturers use a combination of "SCR" (selective catalytic reduction), which entails injecting a urea-based compound into exhaust gas after it leaves the engine, and "EGR" (exhaust gas recirculation), in which exhaust gas is recirculated into the engine to be re-combusted. Appellants' App. Vol. IV pp. 6-7 (¶¶ 27-31). Navistar, however, sought to become the only North American manufacturer to use an EGR-only system, which it claimed would achieve better "fluid economy" by eliminating the need for the urea-based after-treatment. *Id*. at 7

---

[1] We held oral argument in this matter on May 18, 2017. We thank counsel for their presentations.

(¶¶ 32-33). Illini alleges that Navistar's EGR-only system not only failed to comply with EPA emission standards but also left the engines prone to breakdowns because of the amount of exhaust gas being recirculated. Illini contends that Navistar was aware of these facts but nonetheless proceeded to put the trucks on the market through its network of dealers, including Chicago International and Rush.

[4] Between March 2011 and June 2012, Illini purchased nineteen International ProStar on-highway semi-trucks with EGR-only MaxxForce engines, made by Navistar, at Chicago International dealerships in Indiana and Illinois. The trucks quickly began breaking down, forcing Illini to take them in for servicing by Chicago International and Rush. Illini claims that Navistar, Chicago International, and Rush concealed the defects and sometimes actively misrepresented the condition of the trucks, both when marketing and selling the trucks and when servicing them after breakdowns (Illini's claims against Rush are limited to the post-purchase servicing).

[5] Illini's Complaint asserts claims of breach of express warranty (against Navistar), breach of implied warranty (against Chicago International), breach of contract (against both Navistar and Chicago International), fraud (against all defendants), and fraudulent concealment (against all defendants). The defendants filed motions to dismiss all the claims pursuant to Indiana Trial Rule 12(B)(6) (and also Rule 9(B) with regard to the fraud-based claims). After a short hearing, the trial court issued a one-page order granting the motions in part and denying them in part, dismissing the fraud-based claims but allowing

the breach-of-warranty and breach-of-contract claims to proceed. Illini sought and received permission to file an interlocutory appeal of the dismissal of its fraud-based claims, and Navistar and Chicago International have cross-appealed the denial of their motions as to the remaining claims.

[6] We will address Illini's appeal before turning to the cross-appeals. We review motions to dismiss de novo, accepting as true the facts alleged in the complaint, considering the complaint in the light most favorable to the plaintiff, and drawing every reasonable inference in favor of the plaintiff. *Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins. Co.*, 3 N.E.3d 1, 4-5 (Ind. 2014), *aff'd on reh'g*, 12 N.E.3d 240 (Ind. 2014).

# Illini's Appeal

[7] Illini appeals the dismissal of its claims of fraud and fraudulent concealment, both of which it asserted against all three defendants. The Indiana Rules of Trial Procedure set out the requirements for pleading in this state. Generally, a complaint must provide only "a short and plain statement of the claim[.]" Ind. Trial Rule 8(A)(1). Fraud claims, however, must be pled with greater particularity. Trial Rule 9(B) provides that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be specifically averred." The purposes of this specificity requirement include "providing adequate notice to the alleged perpetrator and preventing potentially damaging accusations without some concrete description of what is being alleged." *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 138 (Ind. 1996). To serve

these purposes, the plaintiff must allege with particularity what the representations were, who made them, and when or where they were made. *McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998); *see also Dutton v. Int'l Harvester Co.*, 504 N.E.2d 313, 318 (Ind. Ct. App. 1987) ("The circumstances constituting fraud include the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was procured by fraud."), *reh'g denied*, *trans. denied*.

# I. Fraud

The elements of a fraud claim are (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of. *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013).

## A. Navistar

Illini maintains that it has made several viable allegations of fraud against Navistar. We disagree.

First, Illini characterizes its Complaint as including an allegation that, during a November 2009 event at a Navistar test track in Ohio, several Navistar representatives (named in the Complaint) "specifically stated that with the MaxxForce Trucks and engines, there would be better fuel economy, and Navistar had 'solved the problem' of urea." Appellants' Br. pp. 28-29 (quoting

Appellants' App. Vol. IV pp. 20-21 (¶ 100)). But that is not what the Complaint says. While it alleges that the representations were made, and that there was a November 2009 event, it does not allege that the representations were made **during the November 2009 event**. Rather, the Complaint states that the representations were made during the "time period of 2009-2010." Appellants' App. Vol. IV pp. 20-21 (¶ 100). Illini makes no argument that alleging that a misrepresentation was made at some point during a two-year period is sufficient to satisfy the heightened pleading standard for fraud.

Similarly, Illini maintains that it has alleged that "[i]n 2009 and 2010 (every few months during this time period), Navistar held dealer events" in Chicago and that at those events "the above-named Navistar representatives made misrepresentations regarding the MaxxForce Trucks and their engines, including misrepresentations regarding fuel economy and the EGR-Only system." Appellants' Br. p. 29 (citing Appellants' App. Vol. IV pp. 20-21)). But again, that is not what the Complaint says. Illini does not actually allege that the named Navistar representatives were at the Chicago events; it alleges only that they were at the Ohio test-track event in November 2009 or at "meetings which occurred on a similar timeframe." Appellants' App. Vol. IV p. 20 (¶ 100). Nor has Illini actually claimed that any misrepresentations were made at the Chicago events; it alleges only that misrepresentations were made "[d]uring this time period of 2009-2010," generally. *Id.* at 21 (¶ 100). Most importantly, Illini does not identify in its Complaint when specific Chicago events were held,

what representations were made at particular events, or who made representations at particular events.

[12] Illini's also asserts that its Complaint includes a claim that Navistar made "multiple misrepresentations" in "various trade publications" during "2009 and 2010." Appellants' Br. pp. 29-30. It cites pages 20-21 of its Complaint (Appellants' App. Vol. IV pp. 21-22), which include numerous alleged misrepresentations, but nowhere on those pages does Illini identify specific publications or specific publication dates.

[13] The trial court did not err in dismissing Illini's fraud claim against Navistar.

## B. Chicago International

[14] Regarding Chicago International, Illini tells us that its Complaint alleges that "its representatives attended an event in November of 2009 at a Navistar test track in Ohio" and that "[a]t that event, Bob Stokes from Chicago International/CIT 'specifically stated that with the MaxxForce Trucks and engines, there would be better fuel economy, and Navistar had 'solved the problem' of urea.'" Appellants' Br. pp. 33-34 (quoting Appellants' App. Vol. IV pp. 20-21 (¶ 100)). But while Illini's Complaint makes reference to the November 2009 event, *see* Appellants' App. Vol. IV p. 20 (¶ 100), it does not actually claim that Stokes made the alleged misrepresentations during that event; rather, Illini claims more generally that Stokes made the misrepresentations at some point during the "time period of 2009-2010," *id*. at 21 (¶ 100). Again, Illini does not argue that alleging that fraud was committed

at some point during a two-year period is sufficient to survive a motion to dismiss.[2]  Illini has not convinced us that the trial court erred by dismissing its fraud claim against Chicago International.

## C. Rush

Illini contends that the alleged misrepresentations by Rush "are laid out in detail in the Third Amended Complaint," Appellants' Br. p. 35, but it does not identify any specific misrepresentations.  Instead, it directs us to pages 8, 21, and 22 of the Complaint (Appellants' App. Vol. IV pp. 9, 22, 23).  On those pages, however, Illini only generally alleges that Rush "relayed much of the above-described representations directly to Plaintiffs" and "did, in fact, make the Misrepresentations to Plaintiffs regarding the trucks."  Appellants' App. Vol. IV pp. 9 (¶ 45), 23 (¶ 105).  Illini does not specify the representations Rush allegedly made, who allegedly made them, how they were made, or when they were made.  Given this lack of specificity, the trial court did not err by dismissing Illini's fraud claim against Rush.[3]

---

[2] Illini also argues that it has identified "other specific misrepresentations made to [it] by Stokes, including representations regarding fuel economy," Appellants' Reply Br. p. 33, but it does not direct us to any particular allegations in the Complaint.

[3] Illini asserts that "[i]t is also not necessary for allegations against Rush to be pled separately," Appellants' Br. p. 36, but it does not tell us what it means by this.

# II. Fraudulent Concealment

As a corollary to its claim that the defendants made certain false representations about the condition of the trucks, Illini alleges that the defendants had a duty to disclose the actual facts and that they failed to do so.

## A. Navistar

Illini identifies a number of facts that Navistar allegedly knew but failed to disclose: (1) the trucks would never meet the EPA's 2010 emission standards, (2) the trucks "had severe technical problems that would lead to engine performance and quality issues, including heat, soot, and condensation issues," and (3) "its engine testing had been inadequate and truncated, late in starting, causing late design changes, immature designs and increased warrant risk." *Id.* at 25 (¶¶ 113-115). Illini relies on our Supreme Court's holding that "when a buyer makes inquiries about the condition, qualities, or characteristics of property, the seller must fully declare any and all problems associated with the subject of the inquiry." *Kesling*, 997 N.E.2d at 335. The problem is that Illini does not direct us to any specific allegation in the Complaint that it made any "inquiries" of Navistar, let alone describe the subject matter of any such inquiries. As such, Illini's reliance on *Kesling* is misplaced, and we cannot say that the trial court erred by dismissing its fraudulent-concealment claim against Navistar.

## B. Chicago International

Illini contends that its fraudulent-concealment claim against Chicago International should be allowed to proceed because it has alleged that Chicago International "deliberately withheld the information about the Known Defects associated with the MaxxForce ProStars when [it] had a duty to disclose the information to Plaintiffs." Appellants' App. Vol. IV p. 26 (¶ 118). But Illini has failed to specifically identify what "information" Chicago International allegedly possessed and failed to disclose. The Complaint defines "Known Defects" as "inherent performance and reliability problems," *id*. at 24 (¶ 112), but at no point in the fraudulent-concealment portion of the Complaint does Illini allege with particularity the "problems" of which Chicago International was allegedly aware, *see id*. at 24-27 (¶¶ 111-122). The trial court did not err by dismissing Illini's fraudulent-concealment claim against Chicago International.

## C. Rush

Illini's fraudulent-concealment claim against Rush suffers from the same flaw as its claim against Chicago International. As with Chicago International, Illini relies on its allegation that the defendants "deliberately withheld the information about the Known Defects associated with the MaxxForce ProStars[.]" *Id*. at 26 (¶ 118). But, again, the Complaint defines "Known Defects" very generally as "inherent performance and reliability problems," *id*. at 24 (¶ 112), and nowhere in the fraudulent-concealment portion of the Complaint does Illini specifically identify the "problems" of which Rush was

allegedly aware. *Id*. at 24-27 (¶¶ 111-122). Illini has failed to show that the trial court erred by dismissing its fraudulent-concealment claim against Rush.

# Navistar's Cross-Appeal

[20] Navistar cross-appeals the trial court's denial of its motion to dismiss the other claims against it: breach of express warranty and breach of contract.

# I. Breach of Express Warranty

[21] In its breach-of-express-warranty claim against Navistar, Illini alleges that Navistar represented that the trucks "were of a particular quality when, in fact, they were not." *Id*. at 14 (¶ 73). Illini claims that Navistar "made the above described representations through its agent, Chicago International[.]" *Id*. at 15 (¶ 76). In addition, Illini alleges that Navistar "expressly assured" it that the trucks were "free from defects" and "suitable to perform the duties for which they were manufactured and sold." *Id*. (¶ 77). Illini also claims that it was "expressly assured" that Navistar "had an extensive network of service centers that would promptly provide parts and trained technicians needed to fix any problems" experienced by Illini, that it "repeatedly notified" Navistar of defects, and that Navistar "failed and/or refused to make repairs sufficient to correct the defects." *Id*. (¶¶ 78, 80).

[22] Navistar offers two arguments for dismissal of this claim. First, Navistar notes Illini's allegation that Navistar made the purported representations "through its agent, Chicago International" and argues that Illini has failed to plead facts that

would support a finding of agency. We disagree. Illini does not contend that Chicago International had "actual authority" to act on Navistar's behalf, but "apparent authority" can be established by some communication, direct or indirect, by the principal (here, Navistar) to a third party (here, Illini) that instills a reasonable belief in the mind of the third party that the agent (here, Chicago International) is authorized to act on the principal's behalf. *See Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1166-67 (Ind. 1989). Here, Illini has alleged that Navistar "regularly provided authorized dealers with International and MaxxForce branded literature, signage, and training materials for use in promoting, selling and financing the purchase of their Trucks to customers." Appellants' App. Vol. IV p. 4 (¶ 13). This allegation, while generally stated, is sufficient as a matter of notice pleading to survive a motion to dismiss.[4]

[23] In the alternative, Navistar argues that the trial court should have dismissed Illini's claim because Illini failed to attach the alleged "free from defects" warranty to its Complaint. As Illini explained in the Complaint, it has "not yet been able to locate" what it believes to be "the actual contract (or express warranty)," and it attached "an example of a typical warranty contract for similar Navistar products." *Id*. at 14 (¶ 73). Illini says that it has "requested

---

[4] Navistar cites two Indiana cases in which signage and literature were found to be insufficient to establish apparent authority, but neither of those cases was decided on a motion to dismiss. *See Drake v. Maid-Rite Co.*, 681 N.E.2d 734, 738 (Ind. Ct. App. 1997) (summary judgment), *reh'g denied*; *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1333-37 (7th Cir. 1995) (directed verdict).

copies of these documents from defendants in discovery and if [it] obtains the actual documents, [it] will promptly provide as attachment [sic] to the Complaint at that time." *Id*.

Navistar directs us to Indiana Trial Rule 9.2(A), which provides, in part, "When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading." Navistar contends that failure to comply with Rule 9.2(A) "means dismissal of the warranty claim is proper." Navistar/Rush Reply Br. p. 5. However, Navistar fails to mention subsection (F) of the rule, which grants our trial courts discretion in addressing noncompliance with Rule 9.2(A). Rule 9.2(F) provides, in part:

> Non-compliance with the provisions of this rule requiring a written instrument or an Affidavit of Debt to be included with the pleading may be raised by the first responsive pleading or prior motion of a party. **The court, in its sound discretion, may order compliance, the reasons for non-compliance to be added to the pleadings, or allow the action to continue without further pleading.**

(Emphasis added). We have explained that Rule 9.2(F) "affords the trial court broad discretion in ordering compliance **or permitting an action to proceed without amendment of the pleadings**." *Brenneman Mech. & Elec., Inc. v. First Nat'l Bank of Logansport*, 495 N.E.2d 233, 241 (Ind. Ct. App. 1986) (emphasis added), *reh'g denied, trans. denied*; *see also Brown v. Guinn*, 970 N.E.2d 192, 195 (Ind. Ct. App. 2012) ("[I]t is well established that non-compliance with Rule

9.2(A) is not a per se bar to the action."). In short, the fact that Illini did not attach a "free from defects" warranty to its Complaint is not fatal to its breach-of-express-warranty claim.

[25] In any event, even if we were to conclude that Illini's claim about a "free from defects" warranty is deficient, Illini also claims that Navistar breached one or more "repair" warranties by either failing to make necessary repairs or by failing to do so in a reasonable time. Appellants' Reply Br. pp. 27-28. Illini argues that this allegation, alone, is sufficient to avoid dismissal of the breach-of-express-warranty claim. Navistar offers no response to this argument, and we will not develop one for it.

[26] The trial court did not err by declining to dismiss this claim.

## II. Breach of Contract

[27] Navistar also challenges the trial court's denial of its motion to dismiss Illini's breach-of-contract claim. In that claim, Illini alleges that Chicago International and Navistar "entered into a valid, enforceable contract" with Illini to provide trucks "free from defects" and then failed to do so. Appellants' App. Vol. IV pp. 18-19 (¶¶ 92-96). Illini does not assert that it contracted with Navistar directly but alleges that Chicago International was acting as an "agent" of Navistar when it sold the trucks to Illini. *Id.* at 18 (¶ 93).

[28] Navistar first argues that Illini has failed to allege facts that would support a finding of agency. We rejected this argument above, in relation to Illini's breach-of-express-warranty claim against Navistar, and we do so again here.

[29] Also as with Illini's breach-of-express-warranty claim, Navistar asserts that Illini's breach-of-contract claim must fail because Illini did not attach the alleged contract to its Complaint, as required by Indiana Trial Rule 9.2(A). In the Complaint, Illini admits that it does "not have full copies of the Agreements in [its] possession" but notes that it has attached as Exhibit B "the portions of the Agreements" in its possession, that it has "requested full copies of the Agreements from Defendants," that it believes that "once discovery is completed Defendants will produce full copies of these Agreements," and that it will "promptly attach the full Agreements to the Complaint at that time." *Id*. at 19 (¶ 94). Navistar takes issue with this promise of future compliance with Rule 9.2(A), but again, Rule 9.2(F) grants our trial courts discretion to allow a case to proceed even when there is noncompliance with Rule 9.2(A), *see Brenneman Mech. & Elec., Inc.*, 495 N.E.2d at 241, and the trial court apparently chose to exercise that discretion here.[5]

[30] The trial court did not err by denying Navistar's motion to dismiss Illini's breach-of-contract claim.

---

[5] Navistar makes no argument that the trial court abused its discretion in this regard.

# Chicago International's Cross-Appeal

Chicago International cross-appeals the trial court's denial of its motion to dismiss the other claims against it: breach of implied warranty and breach of contract.

# I. Breach of Implied Warranty

In its breach-of-implied-warranty claim against Chicago International, Illini alleges that Chicago International represented that the trucks "were of a particular quality when, in fact, they were not." Appellants' App. Vol. IV p. 16 (¶ 82). Illini first claims that "Navistar, through its agent, Chicago International, made the above described representations," *id*. (¶ 84), and then adds that Chicago International "impliedly assured" Illini that the trucks were "free from defects," "suitable to perform the duties for which they were manufactured," and "merchantable," *id*. (¶¶ 85-86). Illini also claims that it ultimately discovered that the trucks had "significant problems" (listed in the Complaint), that it "repeatedly notified" Chicago International of the defects, and that Chicago International "failed and/or refused to make repairs sufficient to correct the defects." *Id*. at 16-17 (¶¶ 87, 89).

Chicago International first argues that it cannot be liable on this claim "because it is alleged to have acted solely as Navistar's authorized agent." Chicago International Br. p. 23. It cites the decision of the U.S. District Court for the Northern District of Indiana in *LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co.*, 722 F. Supp. 2d 1015, 1026 (N.D. Ind. 2010), for the proposition that

absent an agreement to the contrary, an agent of a disclosed principal cannot be held liable for the principal's breach of warranty.

[34] Illini does not dispute this point of law, nor does it dispute that it has alleged that Chicago International acted as Navistar's agent. However, it argues that it has also alleged that Chicago International gave warranties on its own behalf, not only on behalf of Navistar as Navistar's agent. Illini cites its allegations that Chicago International "impliedly assured" Illini that the trucks were "free from defects," "suitable to perform the duties for which they were manufactured," and "merchantable." Appellants' App. Vol. IV p. 16 (¶¶ 85-86). This is sufficient to survive Chicago International's motion to dismiss. Our trial rules specifically allow "pleading in the alternative." Ind. Trial Rule 8(E)(2); *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 733 (Ind. 2008).

[35] Chicago International also contends that dismissal is appropriate because it "effectively disclaimed any and all implied warranties." Chicago International Br. p. 24. It directs us to a "Buyers Order" form that was attached as Exhibit B to its motion to dismiss, which it says was provided to Illini when it ordered each of the trucks. Chicago International's App. Vol. II pp. 48-49. The second page of the document is captioned "LIMITED WARRANTY, WARRANTY DISCLAIMER AND LIMITATION OF SELLER'S LIABILITY" and includes what appears to be a fairly comprehensive warranty disclaimer. *Id*. at 49. As Illini notes, however, this document is not part of the Complaint. Therefore, it cannot be considered for purposes of a motion to dismiss. *See Murphy Breeding Lab., Inc. v. W. Cent. Conservancy Dist.*, 828 N.E.2d 923, 926

(Ind. Ct. App. 2005) ("Murphy correctly asserts that because a motion to dismiss tests the legal sufficiency of the complaint, the trial court was foreclosed from considering matters outside the pleadings.").[6]

[36] The trial court properly denied Chicago International's motion to dismiss Illini's breach-of-implied-warranty claim.

## II. Breach of Contract

[37] Chicago International also joins Navistar in arguing that the trial court should have dismissed Illini's breach-of-contract claim. Its first argument is the same as one made by Navistar: that dismissal is appropriate because Illini failed to attach the alleged contract(s) to its Complaint, as required by Trial Rule 9.2(A). In light of the discretion afforded to our trial courts by Trial Rule 9.2(F), we rejected that contention above and do so again here.

[38] In the alternative, Chicago International contends that the breach-of-contract claim against it cannot stand because Illini specifically alleged that Chicago International was acting as Navistar's agent when it entered into the contract(s). We have held that an agent generally is not personally bound by a contract where the agent "discloses the identity of his principal and does not exceed his authority when contracting on the principal's behalf." *Carlson Wagonlit Travel,*

---

[6] When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss is treated as one for summary judgment. *Murphy Breeding Lab., Inc.*, 828 N.E.2d at 926. Chicago International does not argue that this is what happened in this case.

*Inc. v. Moss*, 788 N.E.2d 501, 503 (Ind. Ct. App. 2003). However, Illini's Complaint can also be read, under our liberal rules of notice pleading, to state a breach-of-contract claim against Chicago International directly. Illini alleges that both Chicago International and Navistar "failed to provide Trucks free from defects in accordance with the terms of the agreement." Appellants' App. Vol. IV p. 18 (¶ 92). It also claims that "[t]he aforementioned contract obligated . . . **Defendants** to provide the Trucks free from defects." *Id*. (¶ 94) (emphasis added). Finally, Illini alleges that "**Defendants** breached the Agreement by failing to provide Trucks that were free from defects in accordance with the terms of the Agreement." *Id*. (¶ 96) (emphasis added). Again, while Illini's assertion that Chicago International was not acting as Navistar's agent is directly at odds with its assertion, discussed earlier, that Chicago International was contracting on behalf of Navistar, our trial rules specifically allow for this sort of "pleading in the alternative." T.R. 8(E)(2); *Cent. Ind. Podiatry, P.C.*, 882 N.E.2d at 733.

[39] The trial court did not err by denying Chicago International's motion to dismiss Illini's breach-of-contract claim.

[40] Affirmed.

Robb, J., and Sharpnack, S.J., concur.